PEOPLE v PLANTEFABER

Docket No. 63745. Argued October 8, 1980 (Calendar No. 9).—Decided March 10, 1981.

Cornelius Plantefaber was convicted in Kalamazoo Circuit Court, Donald T. Anderson, J., of possession of marijuana with intent to deliver. Police officers who had been conducting general surveillance at the Tucson International Airport watched the defendant as he entered the terminal and concluded that he fitted a descriptive "profile" used by police to identify persons who might be trafficking in drugs. Upon that conclusion, other police officers smelled the seams of the defendant's two suitcases as they passed by on a baggage conveyor in the airline's baggage room and concluded that they detected the odor of marijuana and talcum powder. They opened and searched the suitcases without obtaining a search warrant, found that the suitcases contained bricks of marijuana, kept one of the bricks, and then resealed the suitcases, which were loaded into a plane departing for Kalamazoo, Michigan. The Arizona police officers watched the defendant leave on the same plane and reported the matter to the Kalamazoo Police Department. More than six hours later, the Kalamazoo police officers stopped the taxicab in which the defendant was riding and arrested him after he left the Kalamazoo airport. The officers took the defendant's suitcases out of the taxi, searched them, and seized the marijuana without a search warrant. The trial court denied the defendant's motion to suppress the marijuana as evidence obtained by an unconstitutional search and seizure. The Court of Appeals, D. F. Walsh, P.J., and M. J. Kelly and Oppliger, JJ., affirmed on the theory that the search in Michigan was a

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5, 6] 68 Am Jur 2d, Searches and Seizures § 44.

[2] 29 Am Jur 2d, Evidence § 411 et seq.

Comment note on "fruit of the poisonous tree" doctrine excluding evidence derived from information gained in illegal search. 43 ALR3d 385.

[3, 8, 9] 68 Am Jur 2d, Searches and Seizures § 84.

[4] 68 Am Jur 2d, Searches and Seizures §§ 4, 35.

[7, 10] 68 Am Jur 2d, Searches and Seizures §§ 42, 43.

continuation of the search begun in Arizona, and that the fact that the suitcases were about to depart on the flight to Kalamazoo was an exigent circumstance in Arizona which excused the constitutional requirement of a search warrant (Docket No. 78-2022). Defendant appeals. In an opinion by Justice Kavanagh, joined by Justices Levin, Fitzgerald, Ryan, and Moody, the Supreme Court *held:*

1. Whether there was but one seizure or not and whether it was in Arizona or in Michigan, the question is the propriety of the search of the luggage after its seizure. The minimum constitutional guarantees require that a search of personal luggage must be attended by probable cause and either a warrant or exigent circumstances. In this case the absence of a warrant reduces the issue to the existence of probable cause and exigent circumstances. Conceding, *arguendo,* that the exigent circumstances permitted the seizure of the luggage without a search warrant, the question is whether there were exigent circumstances which permitted the search of the luggage after the seizure.

2. The Arizona police officers could not have searched the luggage constitutionally after they had taken it in their custody by removing the suitcases from the baggage conveyor because the claimed exigency of mobility had passed upon the seizure of the suitcases. Even if it is conceded, *arguendo,* that the custody of the luggage by the Arizona police officers continued and invested the Michigan police officers with the authority to maintain the custody, when the Michigan officers removed the suitcases from the taxicab there was no exigency in Michigan to permit a search without a warrant. The exigency of mobility must be assessed immediately before the search, after the police have seized the object to be searched and have it securely within their control. Once the officers have seized luggage, as they did here, the extent of its mobility is in no way affected by the place from which it was taken.

3. The Supreme Court of the United States has explained that the owner's principal interest in the privacy of his locked luggage is not in the luggage itself, which is exposed to public view, but in its contents. A search of the interior is, therefore, a far greater intrusion into values protected by the Fourth Amendment than the impoundment of the luggage. The seizure did not diminish the defendant's legitimate expectation that the contents of the luggage would remain private. Where the police have custody and control over personal luggage a search without a warrant cannot be justified on the exigent circumstance of the mobility of the luggage. Therefore, the evidence in

this case should have been suppressed. This holding obviates the need for discussion of the other issues.

Justice Williams concurred because the Kalamazoo police had sufficient notice to get a warrant.

Reversed.

Chief Justice Coleman, dissenting, would affirm the defendant's conviction.

1. The warrant provision of the Fourth Amendment, requiring review by a neutral and detached magistrate, is the primary protection against the risk of unreasonable assertions of executive authority. However, one exception to the warrant requirement is when exigent circumstances do not permit sufficient time to obtain a warrant. The fact that the defendant was not in the officers' custody in Arizona and was boarding an airplane to leave the jurisdiction constituted exigent circumstances relieving the officers from complying with the warrant requirement. By the time a warrant could have been obtained the defendant would have been gone. He was not under arrest and his plane was about to depart. It is not reasonable to seize the proof of criminality but to suffer the criminal to escape. In order to make sense, "exigent circumstances" must encompass mobility of the trafficker as well as the contraband in traffic. The word *unreasonable* is sometimes overlooked in consideration of the prohibition against "unreasonable searches and seizures".

2. The defendant's appearance, activities, and behavior upon entering the terminal in Tucson provided a reasonable basis for the officers to pay special attention to his luggage. The officers, then being in a position in which they had a right to be, detected the odor of marijuana emanating from the suitcases and observed talcum powder on the outside of one suitcase. These perceptions were the equivalent of plain-view observations. Considering the officers' experiences with hundreds of similar cases and all the circumstances surrounding these observations, they had probable cause to believe that contraband was contained in the luggage. Also, because the luggage was scheduled to be removed from the jurisdiction unless immediate action was taken, the officers were justified in seizing the luggage. The area of disagreement is over the propriety of the officers' actions after they seized the luggage.

3. The suitcases were already checked for passage to Kalamazoo and the plane about to depart with the defendant on it. There was no time to seek a search warrant. The existence of probable cause and the exigent circumstance of the defendant's imminent departure from Arizona rendered the warrantless

search and seizure reasonable. The luggage was clearly identified as properly seized and searched by the officers' actions and by the insertion into the suitcases of scraps of notebook paper with identifying data, and of identification marks on one brick of marijuana. The luggage continued under control of the Arizona police. The Kalamazoo police properly arrested the defendant. Their looking into one suitcase after a prior search, seizure, and arrest does not serve to vacate or taint the initial search. It had no bearing upon any right of which defendant was then possessed. There is no prohibition against looking any number of times into a suitcase legally searched and seized.

4. The Kalamazoo officers knew the luggage contained contraband because the officers in Arizona had viewed the contraband and permitted the defendant to receive it in Kalamazoo as a controlled delivery. Controlled deliveries of contraband may serve useful functions in law enforcement. When such a delivery is made, through a constitutionally valid search followed by delivery, the subsequent search of the container following delivery, to insure the contraband has not been removed, is not subject to a constitutional objection on the basis that the search was made without a warrant.

5. Defendant argues that the Tucson search fails the Fourth Amendment test because it may have been possible for the officers to have seized the suitcases upon identifying the odor of marijuana and then to have arrested defendant prior to the plane's actual departure. The record does not reveal the officer's reasoning for failing to arrest the defendant in Tucson, perhaps because neither party considered it to be significant, but the officers acted reasonably under the pressure of time and consideration for all concerned. Whether an arrest could have been made, and, if so, without danger to the public, is a matter for conjecture. Acting upon mere conjecture and in haste in cases of drug trafficking can be fatal. If *reasonableness* remains the touchstone for lawful search and seizure, the Tucson officers have passed the test. There is nothing in the Michigan Constitution which would justify extending its protections on these facts beyond the protections of the Fourth Amendment to require the exclusion of the challenged evidence.

91 Mich App 764; 283 NW2d 846 (1979) reversed.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES — LUGGAGE — WITHOUT A WARRANT — EXIGENT CIRCUMSTANCES.

A search of locked personal luggage in a baggage room at an airport without a search warrant cannot be justified on the

exigent circumstance of the mobility of the luggage, even if it is assumed that police officers had probable cause to seize the luggage, where they had seized control over it by removing it from the conveyor from which the airline's employees would have loaded the luggage on a departing airplane; the exigency of mobility must be assessed immediately before the search, after the officers have seized the object to be searched and have it securely within their control (US Const, Ams IV, XIV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — LUGGAGE — WITHOUT A WARRANT — EXIGENT CIRCUMSTANCES.

Marijuana which was seized by police officers from a defendant's locked luggage without a search warrant was erroneously admitted into evidence, even if it is assumed that the officers had properly obtained custody of the luggage, where the officers had removed the luggage from a taxicab and thus ended the asserted exigency of the mobility of the luggage; once the officers have seized luggage, the extent of its mobility is in no way affected by the place from which it was taken (US Const, Ams IV, XIV; Const 1963, art 1, § 11).

3. SEARCHES AND SEIZURES — LUGGAGE — PRIVACY.

The principal interest of the owner in the privacy of locked luggage is in its contents, and a search of the interior of personal luggage by police officers acting without a search warrant is a far greater intrusion into values protected by the Fourth Amendment than the impoundment of the luggage, which does not diminish the owner's legitimate expectation that its contents would remain private (US Const, Ams IV, XIV; Const 1963, art 1, § 11).

DISSENTING OPINION BY COLEMAN, C.J.

4. SEARCHES AND SEIZURES — WARRANTS.

*The warrant provision of the Fourth Amendment, requiring review by a neutral and detached magistrate, is the primary protection against the risk of unreasonable assertions of executive authority (US Const, Am IV; Const 1963, art 1, § 11).*

5. SEARCHES AND SEIZURES — WITHOUT A WARRANT.

*Exceptions to the warrant requirement of the Fourth Amendment are well recognized in cases where the societal cost of obtaining a warrant, such as dangers to law-enforcement officers or other persons, or the risk of loss or destruction of evidence, outweighs the reasons for requiring a warrant; one exception to the warrant requirement is where exigent circum-*

*stances do not permit sufficient time to obtain a warrant (US
Const, Am IV; Const 1963, art 1, § 11).*

6. SEARCHES AND SEIZURES — LUGGAGE — WITHOUT A WARRANT —
   EXIGENT CIRCUMSTANCES.

*The facts that a defendant was not in the custody of police
officers in Arizona and was boarding an airplane to leave the
jurisdiction constituted exigent circumstances relieving the
police officers from complying with the warrant requirement of
the Fourth Amendment to search the defendant's luggage
where the police officers had probable cause to believe that the
luggage contained marijuana; it is not reasonable to seize the
proof of criminality but to suffer the criminal to escape, and in
order to make sense, exigent circumstances must encompass
the mobility of the trafficker as well as the contraband in
traffic (US Const, Am IV; Const 1963, art 1, § 11).*

7. SEARCHES AND SEIZURES — LUGGAGE — WITHOUT A WARRANT —
   PROBABLE CAUSE.

*Police officers, who were conducting routine surveillance for drug
traffic at an airport, had probable cause to believe that contra-
band was contained in a defendant's luggage where his appear-
ance, activities, and behavior upon entering the airport termi-
nal provided a reasonable basis for the police officers to pay
special attention to the defendant's luggage, and the police
officers, then being in an airlines baggage room in which they
had a right to be, detected the odor of unburned marijuana
emanating from the suitcases and observed talcum powder on
the outside of one suitcase; the perceptions of the officers, based
upon experiences with hundreds of similar cases and all the
circumstances surrounding the observations were the equiva-
lent of plain-view observations (US Const, Am IV; Const 1963,
art 1, § 11).*

8. SEARCHES AND SEIZURES — LUGGAGE — WITHOUT A WARRANT —
   CONTROLLED SUBSTANCES.

*No warrant was required for a search of a defendant's luggage by
police officers in Michigan where the luggage had been properly
seized and searched by police officers in Arizona, and was
clearly identified as properly seized and searched by the Ari-
zona officers' actions and by insertion of identifying marks into
the suitcases, the luggage continued under control of the Ari-
zona officers, and the Michigan police officers knew the luggage
contained contraband marijuana because the officers in Arizona
had viewed it in the defendant's luggage after a constitution-
ally valid search (US Const, Am IV; Const 1963, art 1, § 11).*

9. SEARCHES AND SEIZURES — LUGGAGE — WITHOUT A WARRANT —
CONTROLLED SUBSTANCES — CONTROLLED DELIVERY.

*There is no prohibition against the police looking any number of
times into a suitcase which was legally searched and seized;
where there is a constitutionally valid search of luggage fol-
lowed by a controlled delivery, the subsequent search of the
luggage following delivery, to insure that contraband mari-
juana has not been removed from it, is not subject to a constitu-
tional objection on the basis that the search was made without
a warrant (US Const, Am IV; Const 1963, art 1, § 11).*

10. SEARCHES AND SEIZURES — LUGGAGE — WITHOUT A WARRANT —
CONTROLLED SUBSTANCES — CONTROLLED DELIVERY.

*That it may have been possible for police officers in an Arizona
airport to have seized a defendant's suitcases upon identifying
the odor of unburned marijuana emanating from the luggage
and then to have arrested the defendant prior to the departure
of his flight to Michigan is a matter of conjecture; therefore, a
decision by the Arizona officers to permit the defendant and his
luggage containing contraband marijuana to depart on an
airplane leaving Arizona, and the search and seizure of the
luggage and the arrest of the defendant when the airplane
arrived in Michigan, did not violate any of the defendant's
constitutional rights where the suitcases were well identified by
the Arizona officers, and the contents remained in the continu-
ous control of the Arizona police officers and under surveillance
of the Michigan police until the arrest was made (US Const,
Am IV; Const 1963, art 1, § 11).*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James J. Gregart,*
Prosecuting Attorney, and *Michael H. Dzialowski,*
Principal Appellate Attorney, for the people.

*Plaszczak & Bauhof, P.C.,* and *Vlachos, Jerkins
& Hurley, P.C.,* for defendant.

KAVANAGH, J. This case involves the constitu-
tionality of a warrantless search of personal lug-
gage. Minimum constitutional guarantees provide
that a search of personal effects must be attended

by probable cause[1] *and* either a warrant or exigent circumstances.[2] The absence of a warrant in this case reduces the focus of our constitutional assessment to the existence *vel non* of probable cause and exigent circumstances. Conceding, *arguendo,* the exigent circumstances authorizing the warrantless seizure of the luggage, there were no exigent circumstances authorizing its warrantless search.

The evidence thus obtained should have been suppressed.

On July 26, 1973, narcotics officers of the Tucson, Arizona, Police Department were conducting general surveillance at the Tucson International Airport. Their surveillance consisted of observing people and luggage for possible narcotics activity. At 10:45 p.m. two officers observed defendant as he entered the terminal. The officers testified that defendant appeared nervous and that his general demeanor fit a "profile" which the officers had come to associate with people who traffic in drugs. Other police officers in a private TWA baggage room smelling all the luggage which passed by on a conveyor were told to pay special attention to defendant's luggage. Two police officers placed their noses along the seams of defendant's two suitcases as they passed by along the TWA baggage conveyor. Concluding that they smelled marijuana and talcum powder, the officers removed both suitcases from the conveyor.

With the use of tools the officers broke the lock on one suitcase and searched its contents, discovering 14 bricks of marijuana. Two bricks were removed and marked, one being kept by the police

---

[1] US Const, Ams IV, XIV; Const 1963, art 1, § 11.

[2] *United States v Chadwick,* 433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977); *People v Crawl,* 401 Mich 1; 257 NW2d 86 (1977) (opinion by LEVIN, J.).

officers in Arizona and never offered in evidence and the other replaced in the suitcase. The other suitcase was pried open at a corner revealing its contents of marijuana. The officers did not retain custody of the suitcases but closed, sealed and placed them back on the TWA conveyor for loading into the departing plane. One officer returned to the main concourse to confirm defendant's destination as Kalamazoo, Michigan.

The Tucson narcotics officers chose not to arrest defendant but rather to relay all of their information to the Kalamazoo Police Department. Defendant was observed at the Kalamazoo airport as he disembarked from a plane approximately six hours later. Kalamazoo police officers observed defendant as he collected his luggage and made his way out of the terminal and into a taxicab. The officers testified that they did not arrest defendant as he approached the taxi because a bus full of children was arriving. The officers waited until the cab left the airport and stopped it as it drove on a nearby road. The defendant was arrested, and his luggage taken out of the taxi and searched immediately to reveal marijuana.

Neither the Tucson police officers nor the Kalamazoo police officers had obtained or even attempted to obtain a search warrant.

On appeal defendant-appellant contends that the trial court erred in not suppressing the marijuana as a product of an invalid search and seizure. Neither search was carried out pursuant to a warrant and defendant argues that once the police seized his luggage, whether in Arizona or in Michigan, they should have retained custody thereof until a warrant was obtained.

The prosecution contends that the trial court was correct in refusing to suppress the marijuana.

Appellee argues that there was only one search involved. What occurred in Kalamazoo was not a separate search and seizure, it argues, but only a reassertion of control which had been obtained in Arizona. The initial intrusion in Arizona is argued as justified by probable cause and exigent circumstances. The similarity between the defendant's demeanor and the drug profile along with the odor of unburned marijuana and the presence of talcum powder are argued as providing probable cause to believe defendant's luggage contained contraband. The impending departure of defendant's flight to Kalamazoo is argued as an exigent circumstance. The prosecutor further contends that because the Tucson police relayed their information to the Kalamazoo police the authorities never relinquished custody of defendant's luggage and thus what occurred in Kalamazoo was not a separate search but merely a continuation of the valid search which began in Arizona.

This argument misses the point.

Whether there was but one seizure or not and whether it was in Arizona or Michigan, the question before us is the propriety of the search of the luggage after its seizure.

The Arizona police could not have searched the luggage once they had it in their custody and control by removing it from the conveyor, because the claimed exigency of mobility had passed upon their seizure of the luggage. *United States v Chadwick,* 433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977). If it is conceded, *arguendo,* that their custody continued and invested the Michigan police with authority to maintain that custody, when the Michigan police removed the suitcases from the taxi there was no exigency of mobility or otherwise authorizing a warrantless search in Michigan.

In *Arkansas v Sanders*, 442 US 753, 763; 99 S Ct 2586; 61 L Ed 2d 235 (1979), the Court observed:

"But as we noted in *Chadwick*, the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control. See 433 US, at 13. *Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken.*" (Footnote omitted; emphasis added.)

The philosophy behind this holding is set forth in *Chadwick* where the Court explained its prior holding in *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970):

"Respondent's principal privacy interest in the footlocker was, of course, not in the container itself, which was exposed to public view, but in its contents. A search of the interior was therefore a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker. Though surely a substantial infringement of respondents' use and possession, the seizure did not diminish respondents' legitimate expectation that the footlocker's contents would remain private.

"It was the greatly reduced expectation of privacy in the automobile, coupled with the transportation function of the vehicle, which made the Court in *Chambers* unwilling to decide whether an immediate search of an automobile, or its seizure and indefinite immobilization, constituted a greater interference with the rights of the owner. This is clearly not the case with locked luggage." 433 US 1, 13-14, fn 8.

When the police have custody and control over personal luggage a warrantless search cannot be justified on the basis of the exigent circumstance of mobility.

The evidence here should have been suppressed.

Our holding on this point obviates the need for discussion of the other issues regarding asserted failure to produce a res gestae witness.

Reversed.

LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, J.

WILLIAMS, J. I concur because the Kalamazoo police had sufficient notice to get a warrant.

COLEMAN, C.J. *(dissenting)*. Defendant was convicted of possession of marijuana with intent to deliver.[1] The Court of Appeals affirmed his conviction. This Court granted leave to appeal[2] and the majority concludes that defendant's conviction must be reversed because of what is deemed an unconstitutional search of defendant's luggage in Kalamazoo, Michigan. I dissent from this holding, having concluded that the marijuana introduced into evidence was not obtained in violation of defendant's constitutional rights. The search and seizure in Tucson, Arizona, was constitutional and the luggage remained in continuing control of the police through the time of arrest in Kalamazoo.

I

The entire Arizona episode took place within 32 minutes.

On July 26, 1973, officers of the Tucson, Arizona, narcotics squad were at the Tucson airport observing passengers for possible narcotics activity. Tucson apparently is a busy crossroad for drug traffic,

---

[1] MCL 335.341(1)(c); MSA 18.1070(41)(1)(c), now MCL 333.7401(1); MSA 14.15(7401)(1).

[2] *People v Plantefaber*, 408 Mich 898 (1980).

and surveillance was routine. At 10:45 p.m., two officers observed defendant as he entered the terminal. They saw defendant hurry to the line at the American Airlines counter carrying two heavy suitcases. When defendant learned the flight he wanted was full, he ran to the TWA counter. He had held his luggage in his hands during this period. He purchased a ticket for a flight via TWA to Kalamazoo leaving at 11:17 p.m. and checked his luggage. Then defendant sat down in a chair next to Officer Fragoso, who was in plainclothes. After a short exchange, defendant walked around the terminal, constantly looking about him, until he boarded his flight.

The experienced narcotics officer concluded that defendant fit the established "profile" of persons possibly involved in narcotics trafficking:[3] The defendant had arrived at the airport hurriedly, just before a flight and without a ticket. At a second counter he purchased a ticket for an imminent flight. His luggage had appeared to be heavier than usual, causing him to hunch his shoulders but he did not rest it on the floor. He appeared nervous, repeatedly looked over his shoulder and around the room, and could or would not sit still. He talked rapidly when he conversed with the officer. Manner of dress and appearance were mentioned but did not receive much, if any, weight.

Because defendant appeared to fit the profile established by experience, Officer Fragoso told other officers who were in the baggage claim area to pay particular attention to defendant's luggage when it arrived on the conveyor belt. Several officers then detected an odor of marijuana emitting from the luggage and observed talcum powder

[3] See *United States v Van Lewis*, 409 F Supp 535 (ED Mich, 1976), aff'd 556 F2d 385 (CA 6, 1977), for a general description of a courier profile system's criteria and procedures.

on the outside of one suitcase. Talcum powder is widely used to mask the odor of marijuana. Because they had probable cause to believe that contraband was contained in the suitcases, the officers seized defendant's luggage, removing it from the conveyor belt.

The officers then opened one of defendant's suitcases. Inside they found 14 bricks of marijuana. The officers removed two bricks from the suitcase and marked them for identification. They kept one for evidentiary purposes and replaced the other. Then they repacked and eventually closed the suitcase.

They did not have sufficient time to open and inventory the other suitcase because defendant's flight was scheduled to leave. Instead, they pried open one edge, observed more bricks of marijuana and shut the suitcase. In each suitcase they placed a scrap from a page of a notebook with initials of two officers and the time and date. They replaced the suitcases on the conveyor and the luggage was loaded on the airplane. All of this took place in 32 minutes from defendant's entry into the airport until the plane's departure. The search and seizure took considerably less time.

The defendant made the flight without arrest but Officer Fragoso telephoned the Kalamazoo Police Department to notify them of the information they had obtained. Lieutenant Michael Moshier received the telephone call informing him of descriptive details of defendant and his luggage and results of the Arizona search and seizure.

When defendant disembarked from the airplane in Kalamazoo, an officer placed him under observation. The officer allowed defendant to pick up the two suitcases and carry them out to a taxicab. Because of a busload of children in that area, no

arrest was made there. Defendant left the airport
in the cab with the police following. The officers
stopped the taxicab as soon as they could without
creating unnecessary danger to others. They ar-
rested defendant and removed the suitcases from
the trunk. They then opened one of the suitcases,
exposing the marijuana.

Defendant was convicted in a bench trial of
possession of marijuana with intent to deliver. He
was sentenced to three years' probation and or-
dered to pay court costs of $500.

## II

The main issue on appeal is the constitutionality
of the officers' actions in Tucson and Kalamazoo,
in searching and seizing defendant's suitcases.

US Const, Am IV, provides two significant pro-
tections for the security and privacy of persons. It
protects against "unreasonable searches and sei-
zures". Also, the amendment has been construed
to require that most searches of private property
be performed pursuant to a search warrant.[4] The
warrant provision, requiring review by a neutral
and detached magistrate, is the primary protection
against the risk of unreasonable assertions of exec-
utive authority.[5]

Nevertheless, there are several well-recognized
exceptions to the warrant requirement. In cases in
which the societal cost of obtaining a warrant,
such as dangers to law-enforcement officers or

[4] See *Arkansas v Sanders,* 442 US 753; 99 S Ct 2586; 61 L Ed 2d 235
(1979), *United States v Chadwick,* 433 US 1, 9; 97 S Ct 2476; 53 L Ed
2d 538 (1977), *United States v United States District Court,* 407 US
297, 317; 92 S Ct 2125; 32 L Ed 2d 752 (1972).

[5] See *United States District Court, supra, Coolidge v New Hamp-
shire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), *Johnson v
United States,* 333 US 10, 14; 68 S Ct 367; 92 L Ed 436 (1948), *People
v Beavers,* 393 Mich 554, 566; 227 NW2d 511 (1975).

others or the risk of loss or destruction of evidence, outweighs the reasons for requiring a warrant, a warrant may not be required, see *United States v United States District Court,* 407 US 297, 318; 92 S Ct 2125; 32 L Ed 2d 752 (1972).

One exception to the warrant requirement is when exigent circumstances do not permit sufficient time to obtain a warrant, see *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966).[6] The majority concludes that the circumstances surrounding the search of the luggage in Arizona did not remove the necessity of securing a warrant. I disagree, concluding that the fact that defendant was not in the officers' custody and was in the process of boarding an airplane to leave the jurisdiction constituted exigent circumstances relieving the officers from complying with the warrant requirement. By the time a warrant could have been obtained defendant would have been long gone. He was not under arrest and his plane was about to depart. It is not "reasonable" to seize the proof of criminality but suffer the criminals to escape. In order to make sense, "exigent circumstances" must encompass mobility of the trafficker as well as the contraband in traffic.

It appears to me that the word *"unreasonable"* is sometimes overlooked in consideration of the prohibition against "unreasonable searches and seizures".

### III

The defendant's appearance, activities and behavior upon entering the terminal in Tucson provided a reasonable basis for the officers to pay

[6] See also *United States v Ogden,* 485 F2d 536 (CA 9, 1973), *Hernandez v United States,* 353 F2d 624 (CA 9, 1965).

special attention to defendant's luggage. However, this decision did not constitute a seizure subject to constitutional scrutiny. The officers, then being in a position in which they had a right to be, detected the odor of marijuana emanating from the suitcases and observed talcum powder on the outside of one suitcase. These perceptions were the equivalent of plain-view observations.

Considering the officers' experiences with hundreds of similar cases and all the circumstances surrounding these observations, I am persuaded that the officers had probable cause to believe that contraband was contained in the luggage. Also, because the luggage was scheduled to be removed from the jurisdiction unless immediate action was taken, the officers were justified in seizing the luggage. I think the majority would not conclude otherwise. Our area of disagreement is over the propriety of the officers' actions after they seized the luggage.

## IV

Defendant relies heavily upon *United States v Chadwick,* 433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977). I agree with the Court of Appeals that the case supports the trial judge's ruling. *Chadwick* concerns a defendant, lawfully arrested, who was brought with his footlocker to the Federal building. There, the officers searched the footlocker without a warrant. The Court held that, because defendant was under arrest and in custody, no exigent circumstances were present to excuse a warrantless search.

Such is not the case before the Court. The suitcases were already checked for passage to Kalamazoo (with one stopover) and the plane about to depart with defendant on it. There was no time to

seek a search warrant. The existence of probable cause and the exigent circumstance of defendant's imminent departure from Arizona rendered the warrantless search and seizure "reasonable".

*Arkansas v Sanders*, 442 US 753; 99 S Ct 2586; 61 L Ed 2d 235 (1979), concerns a similar situation, but with some different facts. A reliable informant who previously had given the Little Rock Police Department information leading to defendant's arrest and conviction for possession of marijuana, again informed the department of the time and place of defendant's arrival by airplane and the fact that defendant was traveling with a green suitcase of a given description which contained marijuana. Defendant arrived as stated, selected from the baggage area a green suitcase matching the description given, and left with a third party. They placed the suitcase in a taxi which defendant had waiting. The officers stopped the taxi. Upon request, the taxi driver opened the trunk and, without further permission, the officers opened the suitcase. Ten plastic bags containing 9.3 pounds of marijuana were found. Defendant was convicted of possession of marijuana with intent to deliver. The Arkansas Supreme Court found that the officers had probable cause to believe that the suitcase contained marijuana but that there were no exigent circumstances since both defendant and suitcase were under their control and could have been secured while a warrant was obtained.

Although *Sanders* might have application to the Kalamazoo search under other circumstances, the luggage in question already had been properly seized and searched in Arizona. It was clearly identified as such by the officers' actions and insertions into each suitcase. The luggage continued under control of the Arizona police. The Kalama-

zoo police properly arrested defendant. Their looking into one suitcase after a prior search, seizure and arrest—probably to ascertain that the marijuana still was there—does not serve to vacate or taint the initial search. It had no bearing upon any right of which defendant was then possessed. There is no prohibition against looking any number of times into a suitcase legally searched and seized.

The Kalamazoo officers knew the luggage contained contraband because the officers in Arizona had viewed the contraband and permitted the defendant to receive it in Kalamazoo as a controlled delivery. Controlled deliveries of contraband may serve useful functions in law enforcement. When such a delivery is made, through a constitutionally valid search followed by delivery, the subsequent search of the container following delivery, to insure the contraband has not been removed, is not subject to a constitutional objection on the basis that the search was made without a warrant, see *United States v Andrews,* 618 F2d 646 (CA 10, 1980), *cert den* 449 US 824; 101 S Ct 84; 66 L Ed 2d 26 (1980), *United States v Bulgier,* 618 F2d 472 (CA 7, 1980), *United States v Ford,* 525 F2d 1308 (CA 10, 1975), *United States v DeBerry,* 487 F2d 448 (CA 2, 1973).

In *DeBerry,* the facts were similar to those before us. A Los Angeles air freight supervisor found 15 bricks of marijuana in a suitcase. Los Angeles police inspected the bag and relayed the information to New York authorities who placed it under surveillance upon arrival in New York. Although the Court ruled that there would have been time in 15 hours to obtain a warrant, the Court ruled the warrant was unnecessary because the suitcase was initially searched and seized in California. Likewise, one of the bricks was re-

moved and marked and the suitcase marked with the officer's initials. The Court said:

"Even though the suitcase was then in transit, later in the luggage bin and later still in the freight room, it remained legally 'seized' just as much as if it were under the actual physical control of the police. In fact, except for the time it was actually in the airplane's belly, it was under the close surveillance of the police. Thus, when the agents and police in New York removed the bag from the back seat of the car * * * they were not making an initial seizure, but rather were merely reasserting control of the suitcase which had already been seized for legal purposes * * *. Accordingly, no warrant was required."

*DeBerry* is also similar to *Waugh v State,* 20 Md App 682; 318 A2d 204 (1974), *rev'd on other grounds* 275 Md 22; 338 A2d 268 (1975), in which the Maryland Court of Special Appeals stated that it would have been impractical for the Arizona police to obtain a search warrant to open suitcases which were about to leave for Maryland. That court also rejected the argument that the police should have requested the airline to hold the luggage or that the police should have relied on the Maryland police to obtain a search warrant.

The same result was reached in *Ford* when the Court noted that the California officers had seized and marked a package and placed a business card in it, then had notified Oklahoma City officers who arrested defendant. The Court found that the California officers' dominion over the contraband remained unbroken and that the official seizure of the contraband had taken place in San Francisco.

## V

Defendant argues that the Tucson search fails the Fourth Amendment test because it may have been possible for the officers to have seized the suitcases upon identifying the odor of marijuana

and then to have arrested defendant prior to the plane's actual departure. Although several reasons for failing to attempt hurried arrest in Tucson under these circumstances are apparent, time constraints on the officers in the baggage room with the plane about to depart, as well as danger to the public inherent in a hastily contrived arrest in a crowded terminal or on the plane itself are probabilities. The record does not reveal the officer's reasoning for that judgment call, perhaps because neither party considered it to be significant. In my opinion, the officers acted reasonably under the pressure of time and consideration for all concerned. Whether an arrest could have been made, and, if so, without danger to the public, is a matter for conjecture. We are considering an ugly facet of the real world—drug traffic—in which acting upon mere conjecture and in haste can be fatal.

If *reasonableness* remains the touchstone for lawful search and seizure, the Tucson officers have passed the test.

Defendant also argues that the Arizona seizure and search was defective because of the ruling of this Court in *People v Hilber*, 403 Mich 312; 269 NW2d 159 (1978), in which the majority acknowledged the separate odors of burned and unburned marijuana and concluded that the odor of burned marijuana alone was not evidence of the immediate presence so as to provide probable cause for a search. The case is inapposite to these facts involving the distinctive odor of unburned marijuana detected by narcotics officers experienced in such detection.

## VI

The admission of the evidence seized in this case was not prohibited by Const 1963, art 1, § 11, which provides:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state."

On the facts herein, I find nothing in Const 1963, art 1, § 11, which would justify extending the protections of the state Constitution beyond the protections of US Const, Am IV, so as to require the exclusion of the challenged evidence.

## VII

For the reasons stated by the Court of Appeals, there was no reversible error concerning the res gestae witness issue raised by defendant.

In summary, the Tucson narcotics agents had probable cause to believe that defendant's two suitcases contained marijuana. Under the exigencies of defendant's imminent departure on an airplane leaving the jurisdiction and the short time in which to act, a warrantless search was justified. The well-identified suitcases and contents remained in continuous control of the Tucson police officers and under surveillance of the Kalamazoo officers until the arrest was made. In my opinion, the search, seizure and arrest having been lawful, the subsequent check into one suitcase by the Kalamazoo police violated no constitutional right of defendant.

I would affirm defendant's conviction.