PEOPLE v MILLER

Docket No. 51996. Submitted April 22, 1981, at Detroit.—Decided
    October 7, 1981. Leave to appeal applied for.

James Miller was arrested and charged in Detroit Recorder's
    Court with carrying a pistol in a motor vehicle operated or
    occupied by him and with possession of heroin. The heroin was
    found in defendant's briefcase, which was opened after defen-
    dant was arrested on the gun charge. Defendant filed a motion
    to suppress the evidence and quash the information on the
    ground that he had been illegally arrested. The motion was
    granted and the case dismissed, George W. Crockett, III, J. The
    people appeal. *Held:*

    1. Defendant was not illegally arrested.

    2. The trial court erred in suppressing evidence of the pistol
    that was seized from the automobile.

    3. The trial court did not err in suppressing evidence of the
    heroin that was found in defendant's briefcase. The briefcase
    search was neither an inventory search nor a limited protective
    search.

    4. The order of dismissal is reversed and the case is re-
    manded with instructions to suppress only the evidence of the
    heroin that was found in the briefcase. Evidence of the pistol
    may be admitted into evidence.

    Reversed in part, affirmed in part, and remanded.

    ALLEN, J., dissented in part. He would hold that the briefcase
    was opened as part of a valid inventory search and that

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures §§ 58, 102.5, 103.

[2] 5 Am Jur 2d, Appeal and Error § 704.

[3] 68 Am Jur 2d, Searches and Seizures § 25.

[4] 68 Am Jur 2d, Searches and Seizures § 45.

    Validity, under federal constitution of warrantless search of auto-
        mobile—Supreme Court cases. 26 L Ed 863.

[5-7] 68 Am Jur 2d, Searches and Seizures §§ 57, 57.5, 103.5, 106.

    Lawfulness of "inventory search" of motor vehicle impounded by
        police. 48 ALR3d 537.

[7] 68 Am Jur 2d, Searches and Seizures § 97.

evidence of the heroin is therefore admissible. He would re-
mand for trial on both charges.

OPINION OF THE COURT

1. CRIMINAL LAW — INVESTIGATORY STOPS — SEARCHES AND SEIZURES.

A police officer is authorized to stop an individual where he has
reasonable suspicion that a crime has been or is taking place
and as long as he can articulate specific, reasonable facts
warranting the stop, the stop is valid; the quantum of proof
necessary for this type of investigatory stop is significantly less
than the probable cause necessary for an arrest.

2. APPEAL — CRIMINAL LAW — EVIDENCE.

A trial court's ruling on a motion to suppress evidence will not be
reversed unless it is clearly erroneous; a ruling is clearly
erroneous where the reviewing court is firmly convinced that a
mistake has been made.

3. SEARCHES AND SEIZURES — POLICE OFFICERS.

The fact that a police officer used a flashlight to observe the
interior of an automobile at night is not legally significant.

4. SEARCHES AND SEIZURES — AUTOMOBILES.

A search warrant is required, in the absence of exigent cricum-
stances, before police may search luggage that is taken from a
properly stopped automobile.

5. SEARCHES AND SEIZURES — AUTOMOBILES — INVENTORY SEARCHES.

Routine inventory searches of automobiles are reasonable under
the *Fourth Amendment* when conducted pursuant to standard
procedures and when they are not a pretext concealing an
investigatory police motive; the justifications for inventory
searches are: (1) protection of the owner's property while held
in police custody; (2) protection of the police against claims of
lost or stolen property; and (3) protection of police from poten-
tial danger (US Const, Am IV).

6. SEARCHES AND SEIZURES — AUTOMOBILES — CLOSED CONTAINERS —
INVENTORY SEARCHES.

Closed containers which the police find in automobiles should
generally be inventoried as a unit rather than opened and
itemized.

PARTIAL DISSENT BY ALLEN, J.

7. SEARCHES AND SEIZURES — INVENTORY SEARCHES.

*Police may properly open a briefcase in the possession of a*

*defendant when arrested as part of a lawful inventory search of the items defendant has with him prior to his being taken to jail.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Marshall C. Hill,* for defendant.

Before:' N. J. KAUFMAN, P.J., and ALLEN and D. C. RILEY, JJ.

PER CURIAM. Defendant was arrested on September 9, 1979, and charged with carrying a pistol in a motor vehicle operated or occupied by him, MCL 750.227; MSA 28.424, and possession of heroin, MCL 333.7403(2)(a); MSA 14.15(7403)(2)(a). The preliminary examination was held on March 20, 1980, and defendant was bound over for trial on both charges. On April 16, 1980, defendant filed a motion to suppress evidence and quash the information, alleging that he had been illegally arrested. The motion was granted by a Recorder's Court judge, and an order dismissing the case was entered on April 29, 1980. Plaintiff appeals as of right, pursuant to GCR 1963, 806.1.

On September 9, 1979, at approximately 11 p.m., Detroit Police Officers John Ruese and David Siwak were proceeding northbound on Appoline Street in Detroit when they observed an automobile parked on the side of the street. The car's lights were off, the engine was running, and a man was sitting behind the steering wheel. As the police drove their cruiser past the car, the man turned on the headlights and the car pulled away from the curb. The man drove "about two houses"

down the street, turned off the lights, and parked at the curb again.

The two police officers then went around the block and came up behind the vehicle, positioning their cruiser so that they could have an unobstructed view of the parked vehicle. They watched the car for several minutes and then saw the vehicle's headlights and taillights flash on and off twice. The officers then saw defendant emerge from between two houses near where the vehicle had previously been parked. Defendant had a briefcase in his hand. He entered the parked vehicle on the passenger side, and the interior dome light came on and remained on for "a few moments". When the dome light went off, the car pulled away from the curb with none of its lights on.

Officer Ruese testified:

"Thinking that this was rather suspicious nature and fearing for a possible B & E in the neighborhood, along with the fact that he was driving at nighttime without any traffic lights—without any exterior lights on, we attempted to stop the vehicle. Just as we pulled up behind the vehicle the driver pulled to the curb and stopped and turned the car off and both people got out of the car."

The officers had made no particular effort to stop the vehicle; they turned on neither their siren nor their overhead flasher.

When defendant got out of the car, he looked toward the police, threw the briefcase onto the front seat of the car, slammed the car door shut, and began walking away in a westerly direction. The driver of the car then slammed his door shut, looked toward the police, and began walking in an easterly direction. The police officers approached

the vehicle and ordered defendant and the other man to halt. The two men returned to the vehicle and were asked to produce identification. As defendant was looking for his identification, Officer Ruese shined his flashlight into the car and saw the briefcase on the front seat. He also observed a .32-caliber nickel-plated revolver in a pouch on the side of the briefcase. At that point, defendant and the other man were placed under arrest for carrying a pistol in a motor vehicle. Defendant was handcuffed and was placed in the police cruiser.

Officer Ruese opened the car door, which was unlocked, and removed the briefcase and the gun. He then opened (unzipped) the briefcase and discovered two manila coin envelopes which contained a powdery substance. A subsequent laboratory analysis of the powder showed that it contained traces of heroin.

As previously noted, the preliminary examination was held on March 20, 1980, and defendant was bound over for trial. Subsequently, however, the motion to suppress evidence was granted and an order dismissing the case was entered. Although the reason for his decision is not entirely clear, the examining magistrate apparently believed that this case was similar to, and controlled by, *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971).

The people appeal as of right and raise three claims: (1) that the defendant was not illegally arrested; (2) that the trial judge erred in suppressing evidence of the pistol that the police seized from the automobile; and (3) that the trial judge erred in suppressing evidence of the heroin that the police discovered while searching the briefcase. We shall address these issues *seriatim.*

The police are authorized to stop an individual

where there is a reasonable suspicion that criminal activity may be afoot. *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), *People v Grimmett,* 97 Mich App 212; 293 NW2d 768 (1980). The quantum of proof required for a stop is significantly less than the probable cause necessary for an arrest. As long as the officer can articulate specific, reasonable facts warranting the stop, the stop is valid. *Grimmett, supra,* 216.

Because of the unusual activity that they had witnessed, the police were certainly justified in making an investigatory stop of defendant and his companion. The two men were not arrested until one of the officers observed the pistol in the automobile, at which time the police officers had probable cause to make a valid arrest. We therefore hold that defendant was not illegally arrested.

The people next argue that the trial judge erred in suppressing evidence of the pistol that was seized from the automobile. A trial court's ruling on a motion to suppress evidence will not be reversed unless it is clearly erroneous. *Grimmett, supra,* 214. A ruling is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the firm conviction that a mistake has been committed. *Id., People v Goss,* 89 Mich App 598, 601; 280 NW2d 608 (1979). In the instant case, we are left with such a conviction. The pistol was in the plain view of the officer when it was seized. It was observed from a place where the police had a lawful right to be, *i.e.,* next to the car, and its discovery was inadvertent (unanticipated). *Coolidge, supra, People v Murphy,* 87 Mich App 461; 247 NW2d 819 (1978), *lv den* 406 Mich 991 (1979), *People v Young,* 89 Mich App 753; 282 NW2d 211 (1979), *lv den* 407 Mich 877 (1979), *cert den* 445 US 927 (1980).

The fact that the officer used a flashlight to observe the pistol is not legally significant. See *People v Whalen,* 390 Mich 672, 679; 213 NW2d 116 (1973).

The people further claim that the trial judge erred in suppressing evidence of the heroin that was found in the briefcase since the briefcase search was either an inventory search or a limited protective search.

We note at the outset that the United States Supreme Court and the Michigan Supreme Court have recently held that, in the absence of exigent circumstances, a warrant is required to search luggage that is taken from a properly stopped automobile. *Arkansas v Sanders,* 442 US 753; 99 S Ct 2586; 61 L Ed 2d 235 (1979), *People v Plantefaber,* 410 Mich 594; 302 NW2d 557 (1981).

In *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), the Supreme Court ruled that routine inventory searches of automobiles are reasonable under the Fourth Amendment when conducted pursuant to standard procedures and when they are not a pretext concealing an investigatory police motive. The justifications for inventory searches are: (1) protection of the owner's property while held in police custody; (2) protection of the police against claims of lost or stolen property; and (3) protection of police from potential danger. *Opperman, supra,* 369, *People v Merchant,* 86 Mich App 355, 361; 272 NW2d 656 (1978).

There is nothing in the record to indicate that defendant's briefcase was searched pursuant to a standard inventory procedure. The record does not show that the automobile in which defendant was a passenger was ever impounded or that its other contents were inventoried. In fact, the inventory

search doctrine was never raised below as a justification for the search of the briefcase. During the preliminary examination, Officer Ruese was questioned about his purpose in searching the briefcase:

"*Q.* Officer, for what purpose did you search the remaining briefcase?
"*A.* We confiscated the briefcase along with the weapon as evidence in a possible criminal case, as a custodial search which would be performed on any items confiscated relating to a specific crime."

The testimony clearly cuts against the people's inventory search argument. It demonstrates that Officer Ruese seized and searched the briefcase because he felt that it was evidence related to a specific crime. Hence, we reject the people's argument that the briefcase search was a standard inventory search.

We realize that in *People v Merchant, supra,* a panel of this Court upheld, as a standard inventory search, a search of defendant's briefcase after it had been taken from an automobile. The *Merchant* decision, however, has not been followed by any other panel of this Court, and we decline to do so in the present case. In our view, the *Merchant* decision does not strike the proper balance between an individual's relatively high expectation of privacy in the contents of a closed briefcase and the state's interests in conducting inventory searches.

Moreover, several lower federal court decisions have held that personal luggage and briefcases should be inventoried as a unit rather than opened and itemized. For example, in *United States v Bloomfield,* 594 F2d 1200 (CA 8, 1979), the Court of Appeals for the Eighth Circuit held that the police

violated the Fourth Amendment by opening a closed knapsack during a routine inventory search of defendant's automobile. The Court stated that closed containers found with automobiles should generally be inventoried as a unit rather than opened and itemized. See, also, *United States v Hill,* 458 F Supp 31 (D DC, 1978) (inventory search of defendant's flight bag which had been located in trunk of impounded automobile violated Fourth Amendment), and *United States v Schleis,* 582 F2d 1166 (CA 8, 1978) *(en banc)* (police may not inventory the contents of a briefcase carried by defendant when arrested).

We also reject the people's argument that the briefcase search was a limited protective search. Since the briefcase was taken from the automobile and was under the control of Officer Ruese when the search occurred, the search cannot be justified as a limited protective search.

The order of dismissal is reversed and the case is remanded with instructions to suppress only the evidence of the heroin that was found in the briefcase. Evidence of the pistol may be admitted since the pistol was within the plain view of the police when it was seized.

Reversed in part, affirmed in part, and remanded.

ALLEN, J. *(dissenting in part).* I agree that the trial court erred in suppressing evidence of the pistol. However, as a member of the panel which sat in *People v Merchant,* 86 Mich App 355; 272 NW2d 656 (1978), I cannot agree with the majority that "the *Merchant* decision does not strike a proper balance between an individual's relatively high expectation of privacy" and the state's interest in protecting the public. To begin with, *Mer-*

*chant* was followed without criticism in *People v Godwin,* 94 Mich App 286, 289-290; 288 NW2d 354 (1979).

More significantly, defendant in the instant case was not arrested because of the heroin in the briefcase, but was arrested for carrying a pistol in a motor vehicle and was handcuffed and sitting in the police cruiser under such arrest before the briefcase was opened. The distinction is important. As we stated in *Merchant:*

"However, *Chadwick* [433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977)] was not an inventory case since the arrests there were based on the contents of the footlocker as disclosed by the search. Here, defendant was not arrested for the heroin found in his briefcase but was arrested on outstanding warrants on charges of larceny from a building, and was about to be taken to jail on said charges. Under the circumstances, the police were making a standard type inventory of the items defendant had with him prior to being taken to jail." *Merchant, supra,* 361.

In my opinion, the police were conducting an inventory search at the time the briefcase was opened. Accordingly, the trial court erred in suppressing evidence of the heroin. I would remand for trial on the charges of carrying a pistol and possession of heroin.