PEOPLE v JOHNSON

Docket No. 52410. Submitted January 7, 1981, at Grand Rapids.—
Decided March 17, 1981. Leave to appeal applied for.

David Johnson was convicted of four counts of cruelty to animals
and William Johnson was convicted of one count in the 63rd
District Court, Joseph B. White, J. The Kent Circuit Court,
Woodrow A. Yared, J., affirmed. Leave to appeal was denied
and the Supreme Court, in lieu of leave to appeal, remanded to
the Court of Appeals, 409 Mich 854 (1980). *Held:*

1. An owner of an animal may not be convicted of cruelty to
animals where there is no evidence that the animal was in the
charge or custody of the owner at the time of the offense. There
was no evidence to show that William Johnson had charge or
custody of his animal at the time of the cruelty.

2. The court did not err in allowing evidence of the condition
of the animals to be admitted where the animals were seized by
representatives of the Humane Society under the supervision of
the Deputy Sheriff, the condition of the animals was visible
from outside the property, their condition justified immediate
action and attempts to contact a judge were unsuccessful.

Affirmed as to David Johnson and reversed as to William
Johnson.

1. CRIMINAL LAW — JUDICIAL CONSTRUCTION — STATUTES.

A criminal statute is to be construed according to its language
and not beyond it; where a statute is drawn to be confined in
its operation to certain persons, or persons having a certain
quality or intent, it should be enforced according to those
terms.

2. ANIMALS — CRUELTY TO ANIMALS — CRIMINAL LAW.

An owner of an animal may not be convicted of cruelty to

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 17.
    73 Am Jur 2d, Statutes §§ 22-25, 196, 197.
[2, 4] 4 Am Jur 2d, Animals §§ 27-30.
[2, 4] What constitutes statutory offense of cruelty to animals. 82
    ALR2d 794.
[3] 68 Am Jur 2d, Searches and Seizures §§ 22, 23, 88, 89.

animals where there is no evidence that the animal was in the charge or custody of the owner at the time of the offense.

3. SEARCHES AND SEIZURES — PLAIN VIEW — CONSTITUTIONAL LAW.

Seizure of objects within the plain view of an officer lawfully in a place where he had a right to be is not proscribed by the constitution.

4. ANIMALS — CRUELTY TO ANIMALS — CRIMINAL LAW — SEIZURE OF ANIMALS — STATUTES.

The statute regarding cruelty to animals is concerned with the prevention of cruelty to animals by both prosecution of violators and removal of animals from endangering situations (MCL 752.25; MSA 28.162).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Mark R. VanderMolen,* Assistant Prosecuting Attorney, for the people.

*Idema & Pawlowski* (by *George E. Pawlowski* and *Frank Stanley),* for defendants.

Before: ALLEN, P.J., and J. H. GILLIS and D. F. WALSH, JJ.

J. H. GILLIS, J. Defendants were charged with four counts of cruelty to animals. MCL 752.21; MSA 28.161. After a bench trial, David Johnson was convicted of all four counts and sentenced to 18 months probation, 60 days of which were to be served in jail, and certain fines and costs. William Johnson was convicted of only one count, and similarly sentenced. After unsuccessfully moving for a new trial, defendants appealed as of right to the circuit court. Upon affirmance of their convictions, defendants applied for, but were denied, leave to appeal to this Court. Subsequently, the Supreme Court, in lieu of granting leave, re-

manded the case to this Court for consideration as on leave granted, 409 Mich 854 (1980).

The charges against the defendants were based on their alleged mistreatment of four horses, with each count pertaining to one of the horses. The animals were owned by the Grand Rapids Polo Club, an organization comprised of defendants and their father, John Johnson. The horses were kept on land owned by David Johnson's roommate, Douglas Fruechtenicht. David Johnson testified that he was solely responsible for the care of the horses and that he and his father arranged for food and care. Fruechtenicht indicated that William Johnson had on several occasions ridden the horses and that it was possible that he fed or watered them at those times.

On October 24, 1977, Mary Mutchler, the president of H.O.R.S.E., a branch of the Humane Society of Kent County, was notified by neighbors that there were sick horses on the Fruechtenicht property. Ann Sullivan, the cruelty investigator for the Humane Society, received a similar report. They each went to the property and discovered four emaciated horses, one of which was lying on the ground. The horses were dazed and listless, dragging their back hooves. They were in a dry, sandy pasture area with some weeds. All of the trees in the area had been gnawed free of bark, some as high as 14 feet from the ground

Both Mrs. Mutchler and Miss Sullivan believed that the horses' lives were endangered. Miss Sullivan contacted the local sheriff's department and attempted to get in touch with two different judges, both of whom were unavailable. Deputy Sheriff Ronald Ditmar met Mrs. Mutchler at the property and supervised the removal of the horses. The animals were taken to a veterinarian for examination and then placed in a foster home. No

warrant was obtained to search the premises prior to the removal of the horses.

The horses were diagnosed as suffering from starvation and parasitism. One of the horses, Hazel, had dropped from a normal weight of 1000 pounds to 585 pounds. That horse died four days after it was taken from the property. William Johnson's sole conviction was for the mistreatment of Hazel. There was testimony that he purchased the animal on behalf of the Grand Rapids Polo Club in August of 1974. The trial judge viewed this as evidence that William Johnson owned the horse individually or along with his father and brother.

On appeal, defendant William Johnson initially argues that there was insufficient evidence to support his conviction. At the close of the prosecution's proofs, he moved for dismissal on the ground that there was no proof of his care or custody of Hazel at the time of the alleged cruelty.

MCL 752.21; MSA 28.161 provides in pertinent part:

"Whoever overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates, or cruelly kills, or causes or procures to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, cruelly beaten, mutilated, or cruelly killed, any animal, and whoever having the charge or custody of any animal, either as owner or otherwise, inflicts unnecessary cruelty upon the same, or wilfully fails to provide the same with proper food, drink, shelter, or protection from the weather, is guilty of a misdemeanor and shall be imprisoned for not more than 3 months, or fined not more than $500.00, or by both."

There was no evidence at trial that William Johnson personally deprived the horse of suste-

nance or that it was in his charge or custody. Therefore, his conviction must fail unless we conclude that the owner of an animal necessarily has charge or custody of it.

No Michigan case has construed the statute in this regard. However, the Rhode Island Supreme Court has interpreted an identically worded statute to require that an owner actually have charge and custody of the animal at the time of the alleged incident. *State v Spink,* 19 RI 353; 36 A 91 (1896). In *Spink,* a criminal complaint was held defective for failing to allege this additional element. The court observed that it is not "an offense to neglect to provide these things, if the [defendant], even though he is the owner, does not have the charge and custody of the animals". *Id.,* 356. See also *State v Yorczyk,* 167 Conn 434; 356 A2d 169 (1974).

We agree with this interpretation. A criminal statute is to be construed according to its language and not beyond it. Where a statute is drawn to be confined in its operation to certain persons, or persons having a certain intent or quality, it should be enforced according to those terms. *Meister v People,* 31 Mich 99, 111-112 (1875). Here, the phrase "as owner or otherwise" refers to the fact that a person having charge or custody of an abused animal may be held liable without regard to ownership. To hold an owner liable without proof that he had charge or custody would result in vicarious liability for those acts of cruelty committed by the person with actual charge or custody.

The trial court found defendant William Johnson guilty based on his ownership of the horse in question. However, it was apparent that, among the owners, David Johnson was solely responsible

for the care of the animals. Although William Johnson rode the horses on several occasions during the summer of 1977 and may have fed and watered them at those times, there was no evidence that they were in his charge or custody. Therefore, a rational trier of fact could not have found that element proven beyond a reasonable doubt. The trial court erred in refusing to dismiss all charges against defendant William Johnson. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *People v DeClerk,* 400 Mich 10; 252 NW2d 782 (1977).

Defendants also argue on appeal that the removal of the horses from the property without consent or a valid search warrant was an illegal search and seizure. The issue was raised at trial when defendants objected to the admission of photographs taken of the horses and pasture area pursuant to the search.

The Fourth Amendment protects against unreasonable searches and seizures. Initially, we note that this search was conducted under "color of law" inasmuch as it was carried out under the supervision of the deputy sheriff. *Williams v United States,* 341 US 97; 71 S Ct 576; 95 L Ed 774 (1951), *cf. People v Holloway,* 82 Mich App 629, 631-634; 267 NW2d 454 (1978).[1]

Generally, warrantless searches are held unreasonable. Nonetheless, an exception to the warrant requirement occurs when the search and seizure is of items in plain view. *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973). The plain view doctrine applies when an officer is rightfully in a

---

[1] The lower court record does not reveal whether the Humane Society investigators were themselves deputized by the sheriff under MCL 752.27; MSA 28.164.

position where the evidence is plainly visible. The initial intrusion must be justified and discovery of the evidence inadvertent. *Coolidge v New Hampshire,* 403 US 443, 466; 91 S Ct 2022; 29 L Ed 2d 564 (1971), *People v Harden,* 54 Mich App 353, 357-358; 220 NW2d 785 (1974). Further, immediate action must be justified by exigent circumstances. *People v Heard,* 65 Mich App 494, 498; 237 NW2d 525 (1975).

The circumstances of this case fit within the plain view exception. The condition of horses and the property were visible from outside the property, prompting a complaint to the Humane Society from neighbors. Deputy Sheriff Ditmar was rightfully in a position to observe the evidence since he had just received word that the horses' lives were in jeopardy. He was not dispatched to the scene to obtain evidence and its discovery was the inadvertent result of his having come to the aid of the animals. Finally, the condition of the animals justified immediate action. Deputy Sheriff Ditmar and the Humane Society representatives were confronted with horses appearing weak and undernourished, and Miss Sullivan's attempts to contact two judges were without success. Their intrusion onto the property was a necessary attempt to save the horses' lives. The prevention of cruelty to animals is accomplished not merely by the prosecution of violators but also by the removal of animals from endangering situations. MCL 752.25; MSA 28.162. We therefore find no error in the warrantless entry onto the premises where the horses were kept.

The convictions of defendant David Johnson are affirmed, and the conviction of defendant William Johnson is reversed and the charge dismissed.