PEOPLE v MILLER (ON REMAND)

Docket No. 69300. Submitted January 27, 1983, at Lansing.—Decided
     July 29, 1983. Leave to appeal denied, 418 Mich 904.

     James Miller was arrested and charged in Detroit Recorder's
     Court with carrying a pistol in a motor vehicle operated or
     occupied by him and with possession of heroin. The heroin was
     found in defendant's briefcase, which was removed from the
     vehicle and opened after defendant was arrested on the gun
     charge. Defendant filed a motion to suppress the evidence and
     quash the information on the ground that he had been illegally
     arrested. The motion was granted and the case dismissed,
     George W. Crockett, III, J. The people appealed to the Court of
     Appeals which held that defendant's arrest was not illegal, and
     that the seizure of the gun was proper under the plain view
     doctrine. However, the Court held that the seizure of the
     heroin was illegal. Consequently, the order of dismissal was
     reversed and the case remanded with instructions to suppress
     only the evidence of the heroin. 110 Mich App 270 (1981). The
     Michigan Supreme Court thereafter denied leave to appeal. 413
     Mich 890 (1982). Upon the people's subsequent petition to the
     United States Supreme Court, a writ of certiorari to the Court
     of Appeals was granted. Defendant's motion for leave to pro-
     ceed informa pauperis was also granted. By order dated Janu-
     ary 24, 1983, the judgment was vacated and the case was
     remanded to the Court of Appeals for further consideration in
     light of *United States v Ross,* 456 US 798 (1982), and *New York
     v Belton,* 453 US 454 (1981). — US —; 103 S Ct 809; 74 L Ed 2d
     1010 (1983). On remand, *held:*

          1. The *Belton* case is controlling, therefore, the search of
     defendant's briefcase and a seizure of the heroin found therein
     was proper. The evidence found in the briefcase should not
     have been suppressed.

          2. Defendant was the subject of a lawful custodial arrest for
     carrying a pistol in a motor vehicle operated or occupied by
     him. The search of the briefcase followed immediately upon

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Searches and Seizures § 96.
[2] 29 Am Jur 2d, Evidence § 412.

that arrest. The briefcase was located inside the passenger compartment of the car in which defendant had been a passenger just prior to his arrest. Thus, the briefcase was in the area which *Belton* indicates was within defendant's immediate control. The search of the briefcase was, therefore, constitutionally valid as a search incident to a lawful arrest.

The order of dismissal is reversed, and the case is remanded for trial on the original charges.

1. CRIMINAL LAW — SEARCHES AND SEIZURES — AUTOMOBILES — CONTAINERS.

A policeman who has made a lawful custodial arrest of the occupant of an automobile may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile and examine the contents of any containers, whether open or closed, found therein; the fact that the container was such that it could hold neither a weapon nor evidence of the criminal conduct for which the subject was arrested is not a factor to be considered in determining the validity of such a search; the trunk of an automobile is not included within the scope of this rule.

2. CRIMINAL LAW — EVIDENCE.

Evidence found as a result of a constitutionally valid search incident to a lawful arrest is admissible.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Kim Robert Fawcett),* for defendant on appeal.

ON REMAND

Before: ALLEN, P.J., and N. J. KAUFMAN and MACKENZIE, JJ.

PER CURIAM. On September 9, 1979, at approximately 11 p.m., Detroit Police Officers John Ruese and David Siwak were proceeding northbound on

Appoline Street in Detroit when they observed an automobile parked on the side of the street. The car's lights were off, the engine was running, and a man was sitting behind the steering wheel. As the police drove their cruiser past the car, the man turned on the headlights and the car pulled away from the curb. The man drove "about two houses" down the street, turned off the lights, and parked at the curb again.

The two police officers went around the block and came up behind the vehicle, positioning their cruiser so that they could have an unobstructed view of the parked vehicle and its driver. They watched the car for several minutes before observing the vehicle's headlights and taillights flash on and off twice. The officers then saw defendant emerge from between two houses near where the vehicle had previously been parked. Defendant had a briefcase in his hand. He entered the parked vehicle on the passenger side, and the interior dome light came on and remained on for "a few moments". When the dome light went off, the car pulled away from the curb with none of its lights on.

Officer Ruese testified:

"Thinking that this was rather suspicious nature and fearing for a possible B & E in the neighborhood, along with the fact that he was driving at nighttime without any traffic lights—without any exterior lights on, we attempted to stop the vehicle. Just as we pulled up behind the vehicle the driver pulled to the curb and stopped and turned the car off and both people got out of the car."

The officers had made no particular effort to stop the vehicle; they turned on neither their siren nor their overhead flasher.

When defendant got out of the car, he looked toward the police, threw the briefcase onto the front seat of the car, slammed the door shut, and began walking away in a westerly direction. The driver of the car then slammed his door shut, looked toward the police, and began walking in an easterly direction. The police officers approached the vehicle and ordered defendant and the other man to halt. The two men returned to the vehicle and were asked to produce identification. As defendant was looking for his identification, Officer Ruese shined his flashlight into the car and saw the briefcase on the front seat. He also observed a .32 caliber nickel-plated revolver in a pouch on the side of the briefcase. At that point, defendant and the other man were placed under arrest for carrying a pistol in a motor vehicle. Defendant was handcuffed and was placed in the police cruiser.

Officer Ruese opened the car door, which was unlocked, and removed the briefcase and the gun. He then opened (unzipped) the briefcase and discovered two manila coin envelopes which contained a powdery substance. A subsequent laboratory analysis of the powder showed that it contained traces of heroin.

Defendant was charged with carrying a pistol in a motor vehicle operated or occupied by him, MCL 750.227; MSA 28.424, and possession of heroin, MCL 333.7403(2)(a); MSA 14.15(7403)(2)(a). A preliminary examination was held on March 20, 1980, and defendant was bound over for trial on both charges. On April 16, 1980, defendant filed a motion to suppress evidence and quash the information, alleging that he had been illegally arrested. The motion was granted by a Recorder's Court judge, and an order dismissing the case was entered on April 29, 1980.

The people appealed as of right, alleging that: (1) the defendant was not illegally arrested; (2) the trial judge erred in suppressing evidence of the pistol that the police seized from the automobile; and (3) the trial judge erred in suppressing evidence of the heroin that the police discovered while searching the briefcase. In a published per curiam opinion, we held that defendant's arrest was not illegal, and that the seizure of the gun was proper under the plain view doctrine. However, we held that the seizure of the heroin found in the briefcase was illegal. Consequently, the order of dismissal was reversed and the case remanded with instructions to suppress only the evidence of the heroin that was found in the briefcase. The Michigan Supreme Court denied leave to appeal.[1]

Upon the people's subsequent petition to the United States Supreme Court, a writ of certiorari to the Michigan Court of Appeals was granted. Defendant's motion for leave to proceed in forma pauperis was also granted. By order dated January 24, 1983, the judgment was vacated and the case was remanded to this Court for "further consideration in light of *United States v Ross,* 456 US 798; 102 S Ct 2157; 72 L Ed 2d 572 (1982), and *New York v Belton,* 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981)". — US —; 103 S Ct 809; 74 L Ed 2d 1010 (1983). After considering these cases, we conclude that evidence of the heroin seized in the briefcase should not have been suppressed.

*New York v Belton, supra,*[2] concerned an auto-

---

[1] See *People v Miller,* 110 Mich App 270; 312 NW2d 225 (1981), *lv den* 413 Mich 890 (1982) (ALLEN, J., dissented on the ground that the evidence of the heroin found in the briefcase should not have been suppressed). Our decision on the legality of defendant's arrest and the seizure of the gun remains unchanged. Only the seizure of the heroin is currently at issue.

[2] The decision in *New York v Belton, supra,* was authored by

mobile which was stopped by a police officer because it was travelling at an excessive rate of speed. Defendant was one of four occupants of the vehicle. While attempting to obtain the driver's license and automobile registration, the officer smelled burnt maijuana and saw on the floor of the car an envelope that he associated with marijuana. The officer directed the men to get out of the car, and arrested them for unlawful possession of marijuana. After separating the occupants from each other, the officer searched each one of them and then searched the passenger compartment of the vehicle. On the back seat he found a leather jacket belonging to the defendant. Unzipping one of the pockets of the jacket, the officer discovered cocaine. Defendant Belton was subsequenty indicted for criminal possession of a controlled substance.

The United States Supreme Court, upon grant of a writ of certiorari, addressed the question of the "proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants". 453 US 459. The Court cited *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969), for the rule that a lawful custodial arrest justifies a contemporaneous search without a warrant of the person arrested and of the immediate surrounding area, 453 US 457, but pointed out that there had been confusion regarding the permissible scope of such a search. In an effort to clear up this confusion, the Supreme Court in *Belton* stated:

"While the *Chimel* case established that a search incident to an arrest may not stray beyond the area

Justice Stewart and joined in by four other justices. Justice Stevens concurred in the judgment. Justices Brennan, Marshall, and White dissented.

within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' * * * In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. * * * Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." (Citations and footnotes omitted.) 453 US 460-461.

Accordingly, the Court held that the search of defendant Belton's jacket was not a violation of the Fourth and Fourteenth Amendments and that the evidence found therein should not be suppressed. 453 US 462-463.

In articulating this holding, the Court cautioned that the trunk of an automobile was not included within the scope of this rule. 453 US 460, fn 4. The Court was also careful to point out that the fact that a container was such that it could hold neither a weapon nor evidence of the criminal con-

duct for which the suspect was arrested was not a factor to be considered in determining the validity of a search such as that involved therein. 453 US 461. The Court also rejected the argument that the search in question was not incident to the defendant's arrest because the jacket was, at the time of the search and seizure, under the "exclusive control" of the police officer. 453 US 461, fn 5.

In the instant case, although we believe the Supreme Court's opionion in *Belton* sets a dangerous precedent with far-reaching implications damaging to the interests protected by the Fourth Amendment exclusionary rule, we find no alternative but to abandon our previous ruling and hold that the search of defendant's briefcase and the seizure of the heroin found therein was proper.

There is no doubt that defendant was the subject of a lawful custodial arrest for carrying a pistol in a motor vehicle operated or occupied by him. The search of defendant's briefcase followed immediately upon that arrest. The briefcase was located inside the passenger compartment of the car in which defendant had been a passenger just prior to his arrest. Consequently, the briefcase was in the area which *Belton* indicates was within defendant's immediate control.[3] The search of the briefcase was, therefore, constitutionally valid as a search incident to a lawful arrest. The evidence found in the briefcase should not have been suppressed.[4]

---

[3] This conclusion is supported by the fact that defendant had the briefcase in his hand when he exited from the vehicle and tossed it back into the car upon seeing the police officers approaching.

[4] Although the order of the United States Supreme Court indicated that this Court should also consider its recent decision in *United States v Ross,* 456 US 798; 102 S Ct 2157; 72 L Ed 2d 572 (1982), our conclusion based upon *New York v Belton, supra,* makes a consideration of this case unnecessary.

In any event, we believe *Ross* is distinguishable from the situation involved herein. There, police officers acted upon information from a

The order of dismissal is reversed, and the case is remanded for trial on the original charges.

reliable informant that contraband was contained in the trunk of a specified vehicle at a specified location. The officers proceeded to that location, stopped the vehicle and searched the trunk, finding the described contraband. After the vehicle was taken to police headquarters, a thorough search of the car (without a warrant) was conducted, and a zippered pouch containing currency was seized.

On certiorari, the Supreme Court upheld the legality of these searches and stated:

"In this case, we consider the extent to which police officers—who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it— may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view. We hold that they may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.'

\* \* \*

"We hold that the scope of the warrantless search authorized \* \* \* is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 456 US 800, 825.

Justices Brennan, Marshall, and White dissented, as they had in *New York v Belton, supra.*

In the instant case, there was no reliable informant. Furthermore, the police officers searching defendant's vehicle had no probable cause to believe there was contraband contained therein. There was no basis upon which a magistrate could legitimately have issued a warrant to search this vehicle and its contents. Consequently, we believe the rule announced in *Ross* is inapplicable herein.