PEOPLE v ALFAFARA

Docket No. 75989. Submitted October 11, 1984, at Lansing.—Decided
February 5, 1985.

Defendant, Moriano F. Alfafara, was charged with possession of
marijuana, diazepam, amobarbital and cocaine. A district court
judge granted the defendant's motion to suppress the evidence
and dismissed all of the charges. The people appealed to the
Oakland Circuit Court, which affirmed, Francis X. O'Brien, J.
The people appeal by leave granted. *Held:*

1. The state troopers had probable cause to seize the "roach
clip" containing the cigarette butt to ascertain whether it
contained marijuana. Defendant's arrest for possession of mari-
juana was not unconstitutional and was justified under the
plain view doctrine.

2. The lower courts erred in ruling that the other evidence,
diazepam, amobarbital and cocaine, should be suppressed. The
evidence was found as a result of a search incident to a lawful
arrest for possession of marijuana. The Michigan Constitution
specifically permits such items to be introduced into evidence.

3. Defendant's due process rights were not violated.

Reversed.

1. CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVIDENCE — AP-
PEAL.

A court's ruling on a motion to suppress evidence will not be set

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 602, 835.
  21A Am Jur 2d, Criminal Law § 785.
[2-4, 6] 68 Am Jur 2d, Searches and Seizures §§ 23, 88.
  Search and seizure: observation of objects in "plain view"—Su-
  preme Court cases. 29 L Ed 2d 1067.
[3] 68 Am Jur 2d, Searches and Seizures § 39.
  Lawfulness of search of motor vehicle following arrest for traffic
  violation. 10 ALR3d 314.
[4] 68 Am Jur 2d, Searches and Seizures § 41 *et seq.*
[5] 29 Am Jur 2d, Evidence §§ 408, 413.
[6] 68 Am Jur 2d, Searches and Seizures § 96.
[7] 5 Am Jur 2d, Arrest §§ 2, 33.
[8] 4 Am Jur 2d, Appeal and Error §§ 303, 473.

aside unless clearly erroneous; a ruling is clearly erroneous when the reviewing court is firmly convinced that a mistake has been made.

2. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE.

Where the police justifiably intrude into an area in which a person has a reasonable expectation of privacy and observe evidence or contraband, they may sieze it without a warrant when the conditions of the plain view doctrine are met; the plain view doctrine requires: 1) prior justification for the intrusion into the otherwise protected area, 2) obviously incriminating evidence or contraband, and 3) inadvertent discovery; some panels of the Court of Appeals have also required that the seizure of the item be justified by exigent circumstances.

3. SEARCHES AND SEIZURES — MOTOR VEHICLES.

Police officers who have properly stopped a vehicle for a traffic violation have the right to approach the vehicle, keep its passengers under observation and look inside the vehicle.

4. SEARCHES AND SEIZURES — WARRANTLESS SEARCHES — PLAIN VIEW DOCTRINE — PROBABLE CAUSE.

Police officers need only have probable cause to believe that the object within their plain view is evidence or an implement of a crime to satisfy a condition of the plain view doctrine pertaining to the seizure of property without a warrant which requires that the property be obviously incriminating evidence or contraband.

5. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — CRIMINAL LAW — EVIDENCE.

The Michigan Constitution provides that its provisions prohibiting searches and seizures which are unreasonable or without a warrant shall not be construed to bar from evidence in any criminal proceeding any narcotic, drug, firearm, bomb, explosive or any other dangerous weapon seized by a police officer outside the curtilage of any dwelling house in the state; the supremacy clause of the United States Constitution prohibits Michigan courts from applying this provision to admit evidence which would be barred under the Fourth and Fourteenth Amendments to the United States Constitution; this provision may not be construed to impose a higher standard of reasonableness for searches and seizures of items named in the proviso than the United States Supreme Court has held applicable under the Fourth Amendment (Const 1963, art 1, § 11).

6. SEARCHES AND SEIZURES — MOTOR VEHICLES.

Police may conduct a contemporaneous search incident to a

lawful custodial arrest of an occupant of an automobile; such search may include the contents of any container, closed or open, found within the passenger compartment of the vehicle.

7. CRIMINAL LAW — DUE PROCESS — DELAY IN ARREST.
   A defendant's due process rights will not be found to have been violated as a result of a delay in his arrest where neither prejudice to the defendant nor bad faith on the part of the police is shown.

8. APPEAL — CRIMINAL LAW — TIMELINESS.
   A claim of appeal is timely filed within 20 days after an order dismissing the charges against the defendant is entered; the 20-day period within which to file the claim of appeal begins to run from the date that the order is entered (GCR 1963, 701.2 [a][1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *John L. Kroneman,* Assistant Prosecuting Attorney, for the people.

*Kevin A. McNulty,* for defendant on appeal.

Before: DANHOF, C.J., and GRIBBS and R. M. SHUSTER,* JJ.

PER CURIAM. Defendant was charged with possession of marijuana, possession of diazepam (Valium), possession of amobarbital and possession of cocaine, MCL 333.7403, subds (1), (2)(a)(iv), (2)(b), and (2)(d); MSA 14.15(7403), subds (1), (2)(a)(iv), (2)(b), and (2)(d). The district court granted defendant's motion to suppress evidence and dismissed all the charges. The circuit court affirmed. The people appealed to this Court by leave granted, and we now reverse.

At approximately 2:30 a.m. on July 8, 1981, Michigan State Police Troopers Peete and DeWitt

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

stopped defendant's Buick on I-75 in Troy for speeding, having clocked defendant on radar going 70 miles per hour in a 55-mile-per-hour zone. The officers trained their car's spotlight on defendant's car, illuminating its interior. Both troopers also shone their flashlights into the car as they walked up to it, one on either side.

Trooper Peete, on the driver's side, requested and received a driver's license, registration and proof of insurance from defendant. He testified that defendant was "very nice" to him, and that defendant appeared to be in "good condition". Bending down in order to speak with the driver, Trooper Peete noticed "an alligator clip * * * with a roach attached to it" between the two sun visors. He asked defendant to get out of the car, confiscated the item and placed defendant under arrest for possession of marijuana.

Trooper DeWitt approached the Buick on the passenger side. She scanned the interior of the car with her flashlight to ascertain whether defendant was alone and whether he had any weapons which might be used against the officers. She found no weapons, but did notice "a roach clip, a little metal clip, with a cigarette butt from a hand-rolled cigarette" in between the visors, above the rearview mirror. She testified that she was not absolutely certain what the cigarette was but told her partner that it was possibly a controlled substance.

After escorting defendant to the police vehicle and seating him in the back seat, Trooper DeWitt searched the Buick's passenger compartment and found a small black bag on the front passenger seat. She opened the bag and discovered four small glass vials containing a powdery residue, a film canister containing blue capsules and yellow pills, a metal container, which she later learned was a

"cocaine sniffer", and a short piece of straw. After Trooper Peete observed the contents of the black bag, he released defendant and retained the suspected narcotics, in accordance with State Police Department procedures.

Crime lab analysis revealed that the powdery residue contained cocaine and that the pills were diazepam and amobarbital.

The district court granted defendant's motion to suppress the evidence supporting all four drug charges. It ruled that defendant's arrest for possession of marijuana was illegal because the officers did not have probable cause to believe that the hand-rolled cigarette was marijuana. Then, because the arrest was improper, the evidence found in the black bag must be suppressed as fruit of the illegal arrest, the court ruled.

The circuit court affirmed the district court, noting that even if the arrest were legal, the search of the bag was still impermissible because Michigan had not adopted the U. S. Supreme Court's decision in *New York v Belton,* 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981), permitting a search of the passenger compartment of a vehicle incident to its occupant's lawful arrest.

The prosecution has appealed to this Court. We must decide, first, whether the state troopers had probable cause to believe that the cigarette butt they observed contained marijuana so as to justify their seizure without a warrant of the item and subsequent arrest of defendant for possession of marijuana. Then, assuming the arrest was proper, we must determine whether the search of defendant's car following his arrest, which yielded other drugs, was constitutional.

# I

A court's ruling on a motion to suppress evi-

dence will not be set aside unless clearly errone-ous. A ruling is clearly erroneous when the review-ing court is firmly convinced that a mistake has been made. *People v Reed,* 112 Mich App 693, 695; 317 NW2d 228 (1982).

The Fourth Amendment to the U. S. Constitu-tion, and Article 1, § 11 of the Michigan Constitu-tion, have generally been held to prohibit searches and seizures conducted without a warrant.

There are exceptions, however, one of which is when the item is in "plain view". *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973); *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971). When the police justifiably intrude into an area where a person has a reasonable expectation of privacy and observe evidence or contraband, they may seize it without a warrant if the conditions of the plain view doctrine as set forth in *Coolidge* are present. *Peo-ple v Myshock,* 116 Mich App 72, 75; 321 NW2d 849 (1982). The requirements of the plain view doctrine enumerated in *Myshock* are:

"(1) prior justification for intrusion into the otherwise protected area; (2) the evidence is obviously incrimina-tory or contraband; and (3) the discovery of the evi-dence is inadvertent." *Id.,* pp 75-76.

Other panels of this Court have required exigent circumstances as well. *People v Johnson,* 104 Mich App 629, 635; 305 NW2d 560 (1981); *People v Raybon,* 125 Mich App 295, 301; 336 NW2d 782 (1983). The car's mobility provided the exigent circumstances in this case. *People v Futrell,* 125 Mich App 568, 572-573; 336 NW2d 834 (1983).

Defendant's vehicle was properly stopped for a traffic violation, speeding. Accordingly, the officers had the right to approach the vehicle, keep its

passengers under observation, *People v Eichenberg,* 108 Mich App 578, 580; 310 NW2d 800 (1981), and look inside the vehicle. *People v Julkowski,* 124 Mich App 379, 384; 335 NW2d 47 (1983). That the discovery of the evidence was inadvertent was established by the testimony of both officers that they were checking for weapons when they shone their flashlights into defendant's car.

The only problem in this case would be whether the partially-burned cigarette in a roach clip was "obviously" incriminatory or contraband. To satisfy this element of the plain view doctrine, the offficers need only have probable cause to believe that the object is evidence or an implement of a crime. *People v Dugan,* 102 Mich App 497, 504; 302 NW2d 209 (1980), *lv den* 411 Mich 989 (1981). Both lower courts decided that the officers in this case did not have probable cause to believe the cigarette was contraband.

This Court has in several cases considered whether probable cause existed for believing that an object in plain view was, in fact, a controlled substance, but these cases involved elements different from those in the instant case. For example, in *People v Ridgeway,* 74 Mich App 306; 253 NW2d 743 (1977), the Court rested its finding of probable cause mainly on the officer's experience and knowledge that tinfoil packets like the one on the floor of the car often contained narcotics. *Id.,* p 314. In *People v Kincaid,* 92 Mich App 156; 284 NW2d 486 (1979), the Court cited the arresting officer's prior experience with coin envelopes as well as defendant's suspicious act in throwing the envelopes into the trunk of the car at the approach of the police officer in finding probable cause. With these two facts the *Kincaid* Court thus distinguished *People v Falconer,* 76 Mich App 367;

256 NW2d 597 (1977), *lv den* 402 Mich 816 (1977), where this Court found no probable cause. In *Julkowski, supra,* the Court found probable cause because the defendant appeared to be nervous, hyperactive and smelled of marijuana.

In the instant case, the troopers testified that defendant was not driving erratically and appeared to be in good condition. Trooper Peete had been on the force 3 years and Trooper DeWitt 5 years, at the time of this incident, but there was no specific testimony on their experience with identifying marijuana.

On the other hand, we consider it highly unlikely that state troopers would have reason to believe that the substance in the roach clip could have been anything other than marijuana. We agree with the Alabama court's observation in *Herrin v State,* 349 So 2d 103, 109 (Ala Cr App, 1977):

"To say that Officer Reid did not recognize this substance as contraband defies reality. In this day and time there is a greater awareness of marijuana because not only of the many articles printed concerning this material, but information disseminated over the radio and television. The general public is more aware of marijuana than any other prohibited substance and its availability and use are widespread. Arrests for possession of marijuana are daily occurrences in our State." Accord: *Smith v State,* 363 So 2d 21 (Fla App, 1978).

The arresting officer in that case was a state trooper with five years' experience.

In the instant case, not only did the officers have direct sight of a hand-rolled cigarette, but the cigarette was found attached to an alligator clip or, as described by both officers, a "roach clip". It was located in a position that indicated that it was being preserved for future use. These circum-

stances do not support a determination that the cigarette contained tobacco rather than marijuana. The officers could articulate facts beyond the mere presence of a hand-rolled cigarette. *Cf. State v Ball,* 471 A2d 347 (NH, 1983).

We conclude that the state troopers had probable cause to seize the roach clip containing the cigarette butt to ascertain whether it contained marijuana. Defendant's arrest for possession of marijuana was not unconstitutional.

Although defendant does not specify whether he is relying on the U. S. or Michigan Constitutions, we think the result would be the same under either. See *Texas v Brown,* 460 US 730; 103 S Ct 1535; 85 L Ed 2d 502 (1983).

## II

Because defendant's arrest for possession of marijuana was lawful, the subsequent search of his vehicle and seizure of the diazepam, amobarbital and cocaine may be evaluate as a search incident to a lawful arrest.

In *New York v Belton, supra,* the U. S. Supreme Court ruled that upon lawful custodial arrest of an occupant of an automobile, police may conduct a contemporaneous search incident to that arrest which may include the contents of any container, closed or open, found within the passenger compartment of the vehicle. According to *Belton,* the search of the passenger compartment which yielded the bag containing drugs was proper as it immediately followed defendant's lawful arrest.

Defendant argues, however, that *Belton* is inapplicable to his case because at the time of the lower court rulings, *Belton* had not been specifically adopted by Michigan courts. The *Belton* opinion was released just seven days prior to the

incidents at issue in this case. We note that, in February, 1983, just after the district court's dismissal of this case, but several months before the circuit court's decision on October 5, 1983, this Court incorporated *Belton* into Michigan law, finding no state constitution impediment to its adoption. *People v Jackson,* 123 Mich App 423; 332 NW2d 564 (1983), *lv den* 417 Mich 1100.35 (1983). See also *People v Miller (On Remand),* 128 Mich App 298; 340 NW2d 858 (1983), and *People v Waddell,* 132 Mich App 171; 347 NW2d 13 (1984), both finding *Belton* controlling.

Defendant contends that it would have been erroneous for the lower courts to apply *Belton* because it established a lower standard than that required by the Michigan Constitution. To the contrary, Const 1963, art 1, § 11 specifically provides:

"The provisions of this section [prohibiting unreasonable or warrantless searches and seizures] shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state."

The Michigan Supreme Court has ruled that the supremacy clause of the U. S. Constitution prohibits Michigan courts from applying this provision to admit evidence which would be barred under the Fourth and Fourteenth Amendments to the U. S. Constitution. *People v Pennington,* 383 Mich 611; 178 NW2d 471 (1970). This provision may not be construed to impose a higher standard of reasonableness for searches and seizures of items named in the proviso than the U. S. Supreme Court has held applicable under the Fourth Amendment. *People v Moore,* 391 Mich 426, 435; 216 NW2d 770 (1974).

Of course, in areas falling outside the proviso, Michigan courts have relied on the Michigan Constitution to impose higher requirements than are required by the U. S. Constitution, *e.g.,* entrapment *(People v Turner,* 390 Mich 7; 210 NW2d 336 [1973]), double jeopardy *(People v White,* 390 Mich 245; 212 NW2d 222 [1973]), admissibility of photographs *(People v Secrest,* 413 Mich 521; 321 NW2d 368 [1982]). In fact, in *People v Nash,* 418 Mich 196, 209; 341 NW2d 439 (1983), the Court disapproved of the notion that it applied a higher standard for police conduct than that required by the U. S. Constitution even in cases *not* involving weapons or narcotics.

Before *Belton* relaxed federal standards for searches incident to a lawful arrest, Michigan was compelled to apply the higher standard that the U. S. Supreme Court had determined the Fourth Amendment required. But once *Belton* removed the federal bar to searching compartments within vehicles following an arrest, there was nothing in the Michigan Constitution to require suppression of drugs found from such a search; to the contrary, the Michigan Constitution specifically permits such items to be introduced into evidence. Thus, it does not matter whether Michigan courts had adopted *Belton* at the time of the lower court's decisions; they did not need to. As the items found in the black bag were narcotics, the lower courts erred in ruling that they should be suppressed.

We note that the officers' search of the bag could alternatively be justified under the automobile exception to the warrant requirement. *People v Thompson,* 81 Mich App 54; 264 NW2d 118 (1978).

III

Defendant further argues that, even if the

searches and seizures in this case are valid, his due process rights were violated to the extent that the charges against him should be dismissed. We disagree.

As to the delay in his arrest on three of the counts, he has shown neither prejudice to him nor bad faith on the part of the police, as is required to succeed with such a claim. *People v Harris,* 110 Mich App 636, 647; 313 NW2d 354 (1981); *People v Rios,* 27 Mich App 54; 183 NW2d 321 (1970), *rev'd on other grounds* 386 Mich 172; 191 NW2d 297 (1971).

As to his contention that the amended request for a warrant was improperly heard by a different district judge than the one who heard the original request, defendant failed to raise this issue at the circuit court so we are precluded from addressing it. We note, moreover, that the original dismissal was not at the prosecutor's request, so there was no indication of an attempt to harass defendant or "judge-shop".

Finally, defendant's contention that the prosecutor's appeal to the circuit court was untimely is disproved by the record, which indicates that the appeal was filed within 20 days after the order dismissing the charges was entered on January 18, 1983. It is from this date, and not the date of the court's oral decision, that the 20-day period of GCR 1963, 701.2(a)(1) begins to run. *Hartman v Roberts-Walby Enterprises, Inc,* 380 Mich 105, 109; 155 NW2d 842 (1968).

In conclusion, we hold that the circuit court erred in affirming the district court's dismissal of the charges against defendant, since the search which led to the discovery of the marijuana cigarette was justified under an exception to the warrant requirement under the plain view doctrine,

the police having probable cause to believe that the roach clip contained marijuana; and the subsequent search which led to the discovery of cocaine, diazepam, and amobarbital was justified as a search incident to a lawful arrest and the narcotics are specifically admissible into evidence under the Michigan Constitution.

Reversed.