RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0198P (6th Cir.)
File Name: 03a0198p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AIRLINE PROFESSIONALS
ASSOCIATION OF THE
INTERNATIONAL
BROTHERHOOD OF
TEAMSTERS, LOCAL UNION
No. 1224, AFL-CIO,
     *Plaintiff-Appellant,*

*v.*

AIRBORNE, INC.,
     *Defendant-Appellee,*

ABX AIR, INC.,
     *Defendant.*

No. 01-4152

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 01-00440—Sandra S. Beckwith, District Judge.

Argued: March 14, 2003

Decided and Filed: June 16, 2003

Before: CLAY and ROGERS, Circuit Judges; COFFMAN,
District Judge.

---

### COUNSEL

**ARGUED:** Diana S. Brown, LOGOTHETIS, PENCE &
DOLL, Dayton, Ohio, for Appellant. Andrew D. McClintock,
FORD & HARRISON, Atlanta, Georgia, for Appellee.
**ON BRIEF:** Diana S. Brown, John R. Doll, LOGOTHETIS,
PENCE & DOLL, Dayton, Ohio, for Appellant. E. Scott
Smith, FORD & HARRISON, Atlanta, Georgia, Scott A.
Carroll, VORYS, SATER, SEYMOUR & PEASE,
Cincinnati, Ohio, for Appellee.

---

### OPINION

---

CLAY, Circuit Judge. Plaintiff Airline Professionals
Association, Teamster's Local Union No. 1224 appeals an
order dismissing its complaint to compel arbitration pursuant
to Section 301 of the Labor-Management Relations Act
(LMRA), 29 U.S.C. § 185, originally filed against Defendants
Airborne, Inc. and its wholly owned subsidiary, ABX Air, Inc.
We **AFFIRM** the district court's conclusion, but on different
grounds.

### FACTS

Defendant Airborne is a holding company. ABX and
Airborne Express (f/k/a AFC) are wholly-owned subsidiaries
of Airborne. ABX is an airline subject to the Railway Labor
Act, 45 U.S.C. § 151. Plaintiff is the collective bargaining

---

*The Honorable Jennifer B. Coffman, United States District Judge for
the Eastern and Western Districts of Kentucky, sitting by designation.

representative of the pilots and flight engineers that ABX employs.

ABX and Plaintiff signed a collective bargaining agreement ("CBA"). Separate from the CBA, representatives of Teamsters Local 957 (Plaintiff's predecessor) and AFC signed "Side Letter 8."[1] In June of 1992, when these parties executed Side Letter 8, AFC was the parent of ABX. In relevant part, Side Letter 8 provides:

> It is not the intent of Airborne Freight Corporation and neither [AFC] nor any subsidiary shall establish or conduct on its or their own behalf any airline operations, including international operations, of the type covered by Article 1, Section E, Paragraphs 1 and 2, with the exceptions set forth in Paragraph 5 of the Agreement between ABX Air, Inc. and IBT [International Brotherhood of Teamsters], unless such operations are performed by pilots on the ABX Seniority List. . . .

> In the event of any dispute over the interpretation or application of this letter, the dispute will be promptly submitted for final and binding arbitration . . . . Airborne Freight Corporation further agrees that it shall submit to the jurisdiction of the Arbitrator . . . and . . . shall comply with the Arbitrator's award.

In December of 2000, a corporate restructuring took place in which: (1) AFC was renamed Airborne Express, Inc.; (2) Defendant Airborne, Inc. was formed; and (3) Airborne Express, Inc. (f/k/a AFC) and ABX became wholly-owned subsidiaries of Defendant Airborne, Inc.

On December 21, 2000, after learning about the corporate reorganization, Plaintiff sent a letter to John Starkovich, ABX's Senior Director of Labor Relations, requesting that

---

[1] The parent corporation only signed the Side Letter, not the CBA, because it did not want to create the impression that it employed workers covered by the Railway Labor Act.

Defendant "re-sign" Side Letter 8. Defendant did not reply. On March 15, 2001, Plaintiff sent another letter "demanding that Airborne . . . proceed to arbitration" to determine whether Airborne, as ABX's new parent, had to abide by or "re-sign" Side Letter 8.

On April 5, 2001, Defendant refused Plaintiff's request, questioned whether any arbitrable issue existed, and requested that Plaintiff send all future correspondence to outside counsel, Tom Kassin. Plaintiff repeated its request to Kassin on May 16, 2001. Kassin replied in a June 19, 2001 letter in which he asserted that ABX's new parent, Airborne, is not bound by Side Letter 8. Kassin thus refused Plaintiff's demand for arbitration.

## PROCEDURAL HISTORY

On June 29, 2001, Plaintiff filed its complaint against Defendant and ABX seeking an order "requiring [Defendant] to comply with the dispute resolution procedure set forth in side letter #8, including, but not limited to participation in arbitration." (J.A. at 7-8.) The complaint does not claim that Defendant has conducted or is about to conduct "airline operations" that would contravene Side Letter 8.

On July 23, 2001, Defendant and ABX filed separate motions to dismiss. Defendant's motion asserted lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim upon which relief could be granted, and improper venue. In three paragraphs, the district court dismissed the case against Defendant pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. Specifically, the court concluded that "[t]he facts Plaintiff alleges, particularly Defendant's failure to submit to arbitration the issue of its status *vis-a-vis* Side Letter 8, do not . . . give rise to a claim under 29 U.S.C. § 185 upon which

relief can be granted."[2] As a consequence, four of the five issues raised in this appeal are arguments heard but not addressed by the district court that Defendant now offers as alternative bases for the district court's judgment.[3]

On January 22, 2003, this Court granted ABX's motion to dismiss it as an appellee because Plaintiff failed to file a brief regarding ABX. *See* FED. R. APP. P. 31(c).

## DISCUSSION

Defendant argues that we lack subject matter jurisdiction because Plaintiff has no standing. Specifically, Defendant claims that Plaintiff neglected to allege the required "injury-in-fact." Even if Defendant had not brought the issue to our attention, Article III courts have an independent obligation to determine whether subject matter jurisdiction exists. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990); *Allen v. Wright,* 468 U.S. 737, 750 (1984); *Baird v. Norton,* 266 F.3d 408, 410 (6th Cir. 2001); *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 342 n.5 (6th Cir. 2000).

---

[2]It is unclear why the district court dismissed the case pursuant to 12(b)(6) without first considering its own jurisdiction. Defendant noted a fairly conspicuous standing problem that, in any event, a basic review of the facts should have revealed to the court below.

[3]It is well-established that a prevailing party may "assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." *Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970). "An appellate court can find an alternative basis for concluding that a party is entitled to summary judgment and ignore any erroneous bases relied upon by the district court, provided it proceeds carefully so the opposing party is not denied an opportunity to respond to the new theory." *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir. 1981). An appellant has "an opportunity to respond" when given a chance to "argue [her position] before this Court. *Shah v. Gen. Electric Co.*, 816 F.2d 264, 270 (6th Cir. 1987). None of Defendant's arguments should surprise Plaintiff because Defendant made these same points below.

Article III of the United States Constitution requires that parties attempting to invoke federal jurisdiction allege an actual case or controversy. *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974); *Flast v. Cohen*, 392 U.S. 83, 94-101 (1968). As we have explained:

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To satisfy this "case-or-controversy" requirement, "a plaintiff must establish three elements: (1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue—the injury must be fairly traceable to the defendant's action; and (3) [a] likelihood that the injury would be redressed by a favorable decision of the Court."

*Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) (quoting *Blachy v. Butcher,* 221 F.3d 896, 909 (6th Cir.2000)) (alteration in *Courtney*); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). The elements of Article III standing are more than just pleading requirements. *Lujan,* 504 U.S. at 561. Rather, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.*; *see also Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 288 F.3d 910, 915 (6th Cir. 2002) (citing 13A Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 3531.15 n. 15 (2001 Supp.)). Injury-in-fact means that the plaintiff has "sustained or is in immediate danger of sustaining some direct injury." *Massachusetts v. Mellon,* 262 U.S. 447, 448 (1923). "The injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea*, 414 U.S. at 393-94. Finally, "[w]ithout evidence that the [plaintiff's] predicted result is 'actual or imminent,' such an injury can only be 'conjectural or hypothetical.'" *Mich. Gas Co. v. FERC*, 115 F.3d 1266, 1271 (6th Cir.1997).

It is unclear precisely what injury Plaintiff alleges. In its Reply Brief, attempting to address the standing problem, Plaintiff argues that "[t]he issues raised by the Union's Complaint are clear and real, not hypothetical and abstract. It is [Defendant's] repudiation of any obligation under Side Letter 8 which constitutes a present controversy *ripe for resolution*—not the effect of a hypothetical breach at some point in the future." (Pl.'s Reply Br. at 10) (emphasis added.) Plaintiff also argues:

> This case is clearly fit for judicial resolution at the present stage. There exists no set of facts, real or hypothetical, which would suggest that justice would be better served if judicial resolution would be postponed to some date in the future.

(Pl.'s Reply Br. at 13.) As these passages make clear, Plaintiff confuses standing with ripeness.

The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18 (1993). Requiring that plaintiffs bring only ripe claims helps courts "avoid[] . . . premature adjudication." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49 (1967); *see also Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506 (1972) (explaining that ripeness asks whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). The ripeness doctrine acknowledges the problem inherent in adjudicating a dispute "anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 284 (6th Cir.1997). Determining whether a claim is ripe involves evaluating "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. at 149. To be ripe for review, claims must satisfy both the fitness and the hardship components of the

inquiry. *Nationwide Mut. Ins. Co. v. Cisneros,* 52 F.3d 1351, 1362 (6th Cir.1995).

There is unquestionably some overlap between ripeness and standing. *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975) ("The standing question thus bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention."). When the injury alleged is not actual but merely threatened, standing and ripeness become more difficult to distinguish. A threatened or imminent injury may satisfy standing's injury-in-fact requirement, yet the claim may still be unripe if the issues are not fit for judicial review, perhaps because future events may greatly affect the outcome of the litigation and the cost of waiting is not particularly severe. The converse is also true. As discussed further below, Plaintiff in this case lacks standing because what has allegedly happened does not constitute an injury-in-fact, even though the purely legal issues are presently fit for judicial adjudication.

Plaintiff has only argued that, with respect to the legal issue (whether Plaintiff can force Defendant to arbitrate arbitrability), "[t]here exists no set of facts, real or hypothetical, which would suggest that justice would be better served if judicial resolution would be postponed to some date in the future." (Pl.'s Reply Br. at 13.) Perhaps, but even so, this argument only speaks to whether the legal issue is currently "fit[] . . . for judicial decision." *Abbott Labs.*, 387 U.S. at 149. The present fitness of a claim for judicial review does not establish injury-in-fact.[4]

---

[4] This analysis could conceivably leave one with the erroneous impression that the "hardship" prong of *Abbott Laboratories* ripeness inquiry, *see Abbott Labs.*, 387 U.S. at 149, overlaps entirely with the injury-in-fact component of the tripartite test for standing, *see Friends of the Earth*, 528 U.S. 167, 180-81. An injury-in-fact exists if an injury is actual or imminent. *O'Shea*, 414 U.S. at 393-94. Once a claim overcomes that basic hurdle, the size of the harm no longer matters. In contrast, the size of the harm matters tremendously in determining whether a claim is ripe because although "[b]oth prongs of the [*Abbott Laboratories*] test must be satisfied, although a strong showing on one

The mere fact that Plaintiff is presently uncertain as to whether Side Letter 8 binds Defendant is not an injury-in-fact because Plaintiff does not allege that Defendant is currently engaging or threatening to engage in activity that Side Letter 8 might implicate. *See Atlas Air, Inc. v. Air Line Pilots Ass'n*, 232 F.3d 218, 227 (D.C. Cir. 2000) (finding no Article III basis to exercise jurisdiction over dispute about "future unilateral changes [the company] may wish to make and whether those changes would be lawful under the [Railway Labor Act]") (internal quotation omitted). It is possible that Defendant will never behave in a manner that would violate Side Letter 8, even assuming that agreement binds Defendant. Consequently, the only injury Plaintiff will definitely suffer is abstract uncertainty about whether the arbitration clause binds Defendant. Plaintiff had to allege more.

Perhaps realizing the problem, Plaintiff's counsel attempted to allege more at oral argument. In response to a question from the Court, Plaintiff complained that uncertainty about the status of Side Letter 8 was hindering its ability to effectively negotiate a new collective bargaining agreement with ABX. If Plaintiff knew for certain that Side Letter 8 did not bind Defendant, then Plaintiff might prioritize that issue and press ABX to invite its parent to re-execute a work preservation agreement as a condition of Plaintiff's acquiescence to a new collective bargaining agreement. If Plaintiff knew for certain that Side Letter 8 currently binds Defendant, then Plaintiff could pressure ABX for some other benefit. In essence, collective bargaining negotiations are a give-and-take process, so Plaintiff cannot negotiate effectively unless it knows what benefits it already has.

---

may compensate for a weak one on the other." *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003). Ripeness will not exist (although injury-in-fact will) when a plaintiff has suffered (or will imminently suffer) a small but legally cognizable injury, yet the benefits to adjudicating the dispute at some later time outweigh the hardship the plaintiff will endure by waiting.

We decline to comment on whether this would constitute a constitutionally sufficient injury-in-fact. "The party invoking federal jurisdiction" must establish standing. *Lujan*, 504 U.S. at 561. As the Supreme Court has stressed, the requisites of Article III "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Id*. *Lujan* made undisputably clear that injury-in-fact is *more* than a "mere pleading requirement[]," which obviously means that a party failing to plead an injury-in-fact cannot invoke federal jurisdiction.

The claim by Plaintiff's counsel at oral argument is irrelevant. Under no circumstances may a plaintiff amend its complaint at oral argument on appeal.

We cannot reach the merits of a case that we lack the constitutional authority to decide. For that reason, we **AFFIRM** the district court's decision to dismiss the case.