**PACTIV CORPORATION, a Delaware corporation, Plaintiff,**

v.

**Steven E. CHESTER, Director of the Michigan Department of Environmental Quality, and Michael Cox, Attorney General for the State of Michigan, Defendants.**

**No. CIV.05–71116.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 30, 2006.

Jay E. Brant, Jeffrey L. Woolstrum, Joseph M. Polito, Honigman, Miller, Detroit, MI, for Plaintiff.

Kathleen L. Cavanaugh, Suzanne D. Sonneborn, MI Dept of Atty Gen (Natural Resources), Lansing, MI, for Defendant.

## OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION UNDER F.R. CIV. P. 12(b)(1)

FEIKENS, District Judge.

■ Under Federal Rule of Civil Procedure 12(b)(1), Defendants contest this Court's jurisdiction over this case[1] in lieu of an Answer, claiming there is a lack of standing and ripeness based on insufficient injury to Plaintiff. For the reasons below, I find that while Plaintiff satisfies its burden to allege standing on all claims, only the claims as to M.C.L. §§ 324.20114(1)(h) and 324.20137(1) are sufficiently ripe, and therefore GRANT in part Defendants' motion. Finally, I decline to exercise jurisdiction over the state law claim, and DISMISS it without prejudice.

### FACTUAL BACKGROUND

■ When determining a contest to a threshold question of jurisdiction, this Court must accept all uncontradicted assertions by a plaintiff as true, but when a defendant asserts a factual attack as to the basis for standing, it is within the court's power to require a plaintiff to supply, by amendment to the complaint or by affidavit, further particularized allegations of fact deemed supportive of standing. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Plaintiff bears the burden of establishing jurisdiction. *Hedgepeth v. Tenn.,* 215 F.3d 608, 611 (6th Cir.2000). Here, the uncontested facts allow me to decide the threshold jurisdictional questions.

I will first describe the statutes at issue here and the broad outlines of the parties' interactions. This background is necessary in order to appreciate the import of

---

1. A court always has jurisdiction to determine its jurisdiction, and its findings on jurisdictional issues are valid and entitled to *res judicata* effect, even if the court determines it has no jurisdiction. *E.g.,* William W. Schwarzer, A. Wallace Tashima, and James M. Wagstaffe, *Federal Civil Procedure Before Trial,* 2:21 (2005).

the more recent interactions between the parties, particularly two "Notice of Demand letters" to Plaintiff.

## A. Statutes at Issue

The First Amended Complaint specifically mentions portions of four sections of Michigan's Natural Resources and Environmental Protection Act that Plaintiff contends are pre-empted by federal law: § 324.20107a; § 324.20114(h), which is enforced by § 324.20137(1)(e); and § 324.20119. In addition, under the due process clause of the Fourteenth Amendment, Plaintiff challenges the constitutionality of §§ 20119; 20114(h), and 20137(1)(e).

### 1. M.C.L. § 324.20107a

Section 20107a sets forth the requirements for owners and operators who have knowledge that their property is a "facility" with respect to hazardous substances. It requires owners to "undertake measures as are necessary to prevent exacerbation of the existing contamination" and to "undertak[e] response activity necessary to mitigate unacceptable exposure to hazardous substances [...] and allow for the intended use of the facility in a manner that protects public health and safety." M.C.L. § 324.20107a(1)(a) and (b). M.C.L. § 20107a(2) states that in addition to any other liability, a person who violates § 20107a(1) is liable for the costs of response actions or of damages attributable to the exacerbation of existing contamination and any fines or penalties resulting from the violation of § 20107a(1).[2]

### 2. M.C.L. §§ 324.20114(h) and 324.20137(1)(e)[3]

The portion of § 20114 specifically challenged by Plaintiff is § 20114(1)(h), which requires an owner or operator of a facility to take five actions "upon written request by the department." Those actions include undertaking response and evaluation activities, as well as the submission and implementation of remedial action plans. Section 20137(1)(e) allows the state to sue an individual and seek "a civil fine of not more than $1,000.00 for each day of noncompliance without sufficient cause with a written request of the department pursuant to § 20114(1)(h). A fine imposed under this subdivision shall be based on the seriousness of the violation and any good faith efforts of the person to comply with the request of the department."

### 3. M.C.L. § 324.20119

Section 20119 begins by giving the Department the power to "require persons who are liable under § 20126 to take necessary action to abate the danger or threat" when it determines there is an imminent endangerment to the public from a release or threatened release. M.C.L. § 324.20119(1). The next paragraph authorizes the department to issue an administrative order requiring a person who is liable under § 20126 to perform a response activity or perform other actions. M.C.L. § 324.20119(2). Thirty days after such an order is given, the owner must indicate whether he or she will comply. M.C.L. § 324.20119(3). "A person who, without sufficient cause, violates or fails to proper-

2. Such liability only attaches if the person is also required to perform response activities under other provisions of the Act. M.C.L. § 20107a(2).

3. Plaintiff also argues that M.C.L. § 20137(1)(f) may apply, which provides for a civil fine of not more than $10,000.00 for each day of violation. Because it is not necessary to determine if this section applies to decide the standing and ripeness questions, I will not consider this argument at this time.

ly comply with an administrative order" is liable for civil fines up to $25,000.00 a day and exemplary damages up to three times of the costs the state has spent performing the response activity. M.C.L. § 324.20119(4). A recipient of the order who believes it is "arbitrary, capricious, or unlawful may petition the department, within 60 days after completion of the required action, for reimbursement from the fund for the reasonable coasts of the action plus interest." M.C.L. § 324.20119(5). The department's refusal to grant or act on all or part of the petition is reviewable by courts as the final action of the agency. *Id.* The law specifies that a plaintiff is required to show by a preponderance of the evidence that the order was arbitrary, capricious, or unlawful and that the costs incurred were reasonable. *Id.*

## B. Contours of the Dispute

Plaintiff Pactiv is a Delaware corporation that owns a 700–acre parcel Superfund site with contaminated groundwater from a paper mill in Manistee County. (Defs.' Br. at 2; Pl.'s Resp. Br. at 2.) Under a consent order with the U.S. EPA, Plaintiff performed a required Remedial Investigation and Feasibility Study (RI/FS) in the mid–1980s. (Defs.' Br. at 2.) As a result of the study, for regulatory purposes, the parcel was divided into two units: the source control unit, and the groundwater management unit. (Defs.' Br. at 2.) This case deals only with the groundwater management unit. (Defs.' Br. at 3.)

In 1993, the EPA issued a Record of Decision (ROD) that required only groundwater monitoring, which is often called a "no action" ROD. (Pl.'s Resp. Br. at 3; Defs.' Br. at 3.) During the public participation proceedings regarding that ROD, Defendants objected to the "no action" ROD. Defendants argued that the ground-

water plume was having a negative environmental impact on a lake, that EPA's failure to mandate cleanup actions was not in accordance with state law, and that by failing to incorporate state law requirements into the federal mandates, EPA violated federal law. (Pl.'s Resp. Br. at 3–4; Defs.' Br. at 3.) However, the EPA did not change its mind and instead entered an Administrative Order by Consent with Plaintiff implementing the "no action" ROD in 1994. (Defs.' Br. at 3, Pl.'s Resp. Br. at 4.) Neither of the parties indicate what, if anything, happened between 1994 and 2002.

## C. 2002 Notice of Demand Letter

On January 10, 2002, the Michigan Department of Environmental Quality (MDEQ) sent a "Notice of Demand" letter to Plaintiff. The letter states it its purpose is to notify Plaintiff "of its legal responsibilities" pursuant to state law. (First Am. Compl., Ex. A.) Although the letter also noted that the state might seek penalties of $10,000 per day pursuant to M.C.L. § 324.20137(1)(f) and $25,000 per day pursuant to M.C.L. § 324.3115, this discussion focuses on the portions of the 2002 Notice of Demand letter that relate to the challenged statutory sections discussed above.

### 1. M.C.L. § 324.20107a

The first full paragraph of the third page of the 2002 Notice of Demand letter specifically refers to § 324.20107a, reciting the requirements made by the statute and "hereby request[ing] that Pactiv implement measures as appropriate." (First Am. Compl., Ex. A.)

### 2. M.C.L. §§ 32420114(h) and 324.20137(1)(e)

After statements that inform Plaintiff of its liability under M.C.L. § 324.20216, and

a notice that M.C.L. § 324.20114(g) sets forth the requirements that Plaintiff must meet, the letter reads:

> Therefore, pursuant to Section 20144(1)(h) of the [Act], the MDEQ hereby requests that Pactiv commit to develop and submit [ . . . ] for review and approval, the following:
>
> 1. A work plan to conduct an RI [remedial investigation] to support the selection of a remedial action that will comply with Sections 20114, 20120a, 20120b, and 20120c of the [Act] for the [ . . . ] Facility.
> 2. A schedule for development of a work plan for a feasibility study to develop, evaluate, and select appropriate remedial action for the [ . . . ] Facility.
> 3. A schedule for development of a Remedial Action Plan (RAP) that when implemented complies with Sections 20118, 20210a, 20120b, and 20120d of the NREPA. Any remedial actions performed must be designed to address both the PCA Superfund Facility and Martin Marietta commingled plumes. [ . . . ]
> 4. A commitment to implement the approved RAP in accordance with a schedule approved by the MDEQ. *Id.*

On the following page, the letter went on to say: "If you voluntarily decide to resolve your liability with the state as described in this letter, please submit a proposal for entering into a binding Administrative Order by Consent (AOC)" and noting that "[i]f we are unable to resolve this matter [ . . . ], the state will take appropriate action to secure implementation of response activities". *Id.* Among the possible actions the state said it might take was the performance of necessary response activities using public funds and a suit for reimbursement of that amount. (*Id.*) The letter went on to note that "these requirements are in effect regardless of the progress of any anticipated negotiations to enter voluntarily into a legal agreement with the state," and noted that under M.C.L. § 324.20137(1)(e), a civil fine of up to $1,000 per day may apply for noncompliance without just cause with a written request pursuant to M.C.L. § 324.20114(1)(h), and noted that the letter served as that notice.

### 4. M.C.L. § 324.20119

The 2002 Notice of Demand Letter references § 20119 directly only in the section of the letter that discusses what actions the State will take "if we are unable to resolve this matter." (First Am. Compl., Ex. A, 5.) There is one other possible reference to § 20119 in the 2002 Notice of Demand Letter: it notes that the State has spent $666,804.52 "to perform response activities" and is preceded by the sentence, "State law authorizes the Michigan Department of Environmental Quality (MDEQ) to use state funds to undertake response activities that are necessary to protect public health, safety, and welfare and the environment at a facility." (*Id.* at 1–2.) The letter does not indicate what provision in the law supports that statement.

### D. 2003 Notice of Demand Letter

On December 19, 2003 (nearly two years after the first letter), MDEQ sent a second Notice of Demand letter to Plaintiff. (Pl.'s Br. at 5; Defs.' Reply Br. 2.) The 2003 Notice of Demand letter states that Pactiv is liable under State law. The end of the first paragraph reads, "[p]ursuant to Section 20114(1)(h) of the NREPA, MDEQ hereby requests that Pactiv perform the response activities specified in Attachment A to this letter." (First Am. Compl. Ex. B.) It goes on to say:

> Pactiv is also jointly and severally liable for all costs of response activities lawfully incurred by the state relating to the

selection and implementation of response activities. The MDEQ hereby demands payment from Pactiv in the amount of $824,157.38 plus any costs that continue to accrue, including any and all interest. (*Id.*)

The list of response activities listed in the 2003 Notice of Demand letter's attachment contains six items (not counting subparts): (1) performing an investigation that involves sampling existing wells as well as conducting vertical profiling; (2) installing permanent monitoring wells along a lake; (3) performing a treatability study; (4) "upon written request by the MDEQ pursuant to Section 20114(1)(h) of the NREPA" treating and/or disposing of extracted contaminated groundwater; (5) performing a Phase II investigation that requires further vertical profiling; and (6) implementing any other response activities the State finds are appropriate. *Id.* The letter requests a response within 30 days indicating whether Plaintiff would agree to "perform the response actions" and pay the state's response activity costs. *Id.*

Although Plaintiff does not elaborate on what occurred following this letter, Defendants contend that extensive negotiations have taken place since that letter, but that such negotiations broke down shortly before the filing of this case. (Defs.' Br. at 3; Defs.' Reply Br. at 2.) Defendants claim that letters sent after the 2003 Notice of Demand letter are "substantially different" from those that came before. (Defs.' Reply Br. at 2.)

**ANALYSIS**

■ Defendants argue that this case lacks the required harm necessary to give Plaintiff standing or to make this case ripe. Both standing and ripeness elements must be satisfied by Plaintiff. *Hedgepeth v. Tenn.*, 215 F.3d 608, 611 (6th Cir.2000). The Sixth Circuit teaches that although there is some overlap, the test for sufficient injury in the standing doctrine differs from the test for sufficient hardship in the ripeness doctrine. *Airline Prof'ls. Assoc. of Int'l Bhd. of Teamsters, Local Union No. 1224, AFL–CIO v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir.2003). I address the justiciability issues in turn.

**A. Standing**

■ To satisfy the constitutional requirements of Article III standing, Plaintiff must "suffer[ ] an 'injury in fact'—an invasion of a judicially cognizable interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Bennett v. Spear*, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). In pre-enforcement suits, plaintiffs satisfy their burden of alleging an injury-in-fact when they "allege[ ] an actual and well-founded fear that the law will be enforced against them." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). When an action is brought under the Declaratory Judgment Act, as this case is, a plaintiff must show "a significant possibility of future harm in order to demonstrate the need for pre-enforcement review," and pre-enforcement review is "usually granted" when a statute "imposes costly, self-executing compliance burdens." *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir.1997) (quoting *Minn. Citizens Concerned for Life v. Fed. Election Comm'n*, 113 F.3d 129, 132 (8th Cir.1997)).

■ The Notice of Demand letters are sufficient for me to find Plaintiff has alleged the requisite injury in fact for the statutory provisions that are being challenged. The 2002 Notice of Demand letter, in requesting that Plaintiff undertake some implementation activities and devel-

op various submissions, cited § 20107a and § 20114(1)(h). The 2002 Notice of Demand letter cited § 20137(1)(e) as a basis for a fine for Plaintiff for failure to comply with these requests, and also threatened action under § 20119 if the matter was not resolved. Standing alone, this letter therefore satisfies Plaintiff's pleading requirement of an "actual and well-founded fear" that the State would enforce the challenged statutes against them. The injury as pleaded meets the test of being concrete and particularized, as well as imminent.

■ Defendants make several arguments that challenge standing, none of which has merit. First, they argue that the Notice of Demand letters did not cause an injury in fact, because they "advise the recipient of its obligations under the law." (Defs.' Supp. Br., 4.) This argument fails because the issuance of such a letter shows a significant possibility of future harm (that is, a likelihood of enforcement) against Plaintiff.[4] Second, Defendants argue the statutes at issue are not self-executing. (Defs.' Supp. Br., 4.) Because self-execution is not a requirement for standing, only a condition under which review is "usually" granted, I need not examine this contention to determine standing. *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir.1997). Third, Defendants argue that because the state statute prohibits pre-enforcement review,

Plaintiff does not have standing. *See* § 324.20137(4). Plaintiff's Complaint states in part that the state statute violates federal law, that the statutes are preempted by federal law, and that the state statute violates the U.S. Constitution. (First Am. Compl. Counts I—III.) A state statute cannot divest a federal court of its power to hear federal law claims, nor the standing of litigants to bring such claims, because those rights arise out of the U.S. Constitution and federal law, which is supreme. U.S. Const. Art. VI, § 2; *see also, e.g., BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (overriding of state law when in conflict with federal law).

Finally, Defendants argue that the Demand Letters do not implicate due process concerns, and therefore, Plaintiff does not have standing to bring its due process claims or its pattern and practice claims, citing *Gen. Elec. Co. v. Johnson*, 362 F.Supp.2d 327 (D.D.C.2005). In that case, cited by Defendants for the proposition that Plaintiff does not have standing, the court held that the plaintiff "satisfie[d] the prerequisites for constitutional standing" because such standing "is based upon the fact that this allegedly unconstitutional practice has been applied to and injured [the plaintiff]." *Id.* at 337. Here, Plaintiff alleges that an unconstitutional practice is likely to be applied to Plaintiff and cause it injury, and thus, there is standing.[5]

---

**4.** This case is factually different from the case Defendants cite for support, *Allen v. Wright*, 468 U.S. 737, 760, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Here, Plaintiff received two letters from Defendants that indicated an intent to enforce several statutes against it. It is well-established that this kind of claim, in which there is evidence supporting the likely enforcement of the statute against Plaintiffs' current conduct, and an economic impact of compliance, is different from a case brought asserting a generalized grievance created by the mere existence of a statute. *E.g. Peoples*

*Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 529–530 (6th Cir.1998).

**5.** At oral argument, Defendants also put forward the theory that Plaintiff lacked standing to bring the pattern and practice claim because to do so would require third party standing. This argument is essentially a restatement of Defendants' argument that Plaintiff is not sufficiently injured to show standing, a contention that precedent—including the precedent cited by Defendants—makes

I find I have standing to hear the challenges against all identified statutes.

## B. Ripeness

■■ In determining whether a claim is ripe, the Sixth Circuit has considered the following factors: "(1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir.2002) (citing *Adult Video Ass'n v. United States*, 71 F.3d 563, 568 (6th Cir.1995)). The three prong test has been stated differently in other recent Sixth Circuit jurisprudence relating specifically to pre-enforcement challenges:

> In determining whether a pre-enforcement challenge is ripe, three considerations must be weighed. The first two deal with the 'fitness of the issues for judicial determination.' One aspect of the 'judicial fitness of the issues' is the extent to which the legal analysis would benefit from having a concrete factual context. The second aspect of the 'judicial fitness of the issues' is the extent to which the enforcement authority's legal position is subject to change before enforcement. The third consideration deals with the 'hardship to the parties of withholding court consideration.'

*Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir.2003) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and *Ohio Forestry Association v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998)). A claim must satisfy all prongs in order to be ripe, but a weak showing on one prong may be offset by a strong showing on another. *Airline Prof'ls. Assoc.*, 332 F.3d at 988 n. 4. A claim may "be unripe if the issues are clear must fail. *Gen. Elec. Co. v. Johnson,*

not fit for judicial review, perhaps because future events may greatly affect the outcome of the litigation and the cost of waiting is not particularly severe." *Id.* at 988. Notably, "ripeness will not exist (although injury-in-fact will) when a plaintiff has suffered (or will imminently suffer) a small but legally cognizable injury, yet the benefits to adjudicating the dispute at some later time outweigh the hardship the plaintiff will endure by waiting." *Id.* at 988 n. 4.

The Supreme Court has found sufficient "hardship" in a pre-enforcement review of a regulation even when some plaintiffs can show only that the resolution of the conflict "will determine the level of funding they must budget for pollution controls. They should not be left to speculate on what the regulations require of them." *Envtl. Prot. Agency v. Nat'l Crushed Stone Ass'n*, 449 U.S. 64, 73 n. 12, 101 S.Ct. 295, 66 L.Ed.2d 268 (1980). In that case, the Court noted that the government had claimed it would also suffer hardship if the case was not adjudicated.

### 1. Judicial Fitness of the Issues

The Sixth Circuit has identified two elements to consider on this portion of the ripeness inquiry: namely, whether more factual development is needed and whether the enforcement authority's legal position is subject to change before enforcement. *Ammex.*, 351 F.3d.at 706. Here, Defendants' argument encompasses both elements: they argue that the letters are not final agency action or the "last word" and therefore, this case is not ripe because the precise facts about Plaintiff's requirements under state law have not been finally spelled out. (Defs.' Reply Br. 2.) Pactiv argues that because the letters state what actions must be taken and the correspond-

ing penalties accrue for noncompliance, this factor in determining ripeness weighs in its favor.

Michigan courts have given great weight to federal jurisprudence on ripeness and finality issues. Don Le Duc, *Michigan Administrative Law* § 10:24 at 770. In order to determine when an agency action is "final," the Supreme Court has put forward a two-part test:

> First, the action must mark the consummation of the agency's decisionmaking process-it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett*, 520 U.S. at 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281.

■■■■ The plain text of M.C.L. § 324.20119 makes it clear that an administrative order must issue from the Department as a last enforcement step.[6] No such order has issued. Therefore, the action does not mark the consummation of the agency's decision making process— Plaintiff's obligations under that statute have not undergone a final determination in that what response action must be taken has not yet been finally determined. Therefore, this prong weighs against ripeness of Plaintiff's challenge under § 324.20119.

Similarly, M.C.L. § 324.20114(h) contains plain language identifying the consummation of the agency's decision making process. Namely, it provides for the issuance by the agency of a "written request," upon receipt of which, the recipient then must (among other things) provide a plan for response activities and evaluation activ-

ities. In contrast to simply requiring unspecified activities, the instruction to provide a plan is concrete: the recipient must draw up a plan and submit it, and the plan must name those activities the recipient will undertake. This reading is supported by M.C.L. § 324.20137(1)(e), which makes it clear that legal obligations flow from the written request: liability up to $1,000 per day for noncompliance begins to accrue after its issuance. Additionally, M.C.L. § 324.20137(1)(e) contains a burden-shifting provision: once that liability begins to accrue, the burden shifts away from the government to prove that such liability is warranted and onto the recipient of the request, who must then prove that it has "sufficient cause" for noncompliance. Thus, because the letters are undoubtedly a written request that qualifies, Plaintiff has evidence of both finality of the agency action and the flow of obligation from that decision to put this prong in favor of ripeness for their challenge to M.C.L. §§ 324.20114(h) and 324.20137(1)(e).

■■■ Now I turn to the challenges to M.C.L. § 324.20107a. There is unspecific language similar to that in M.C.L. § 324.20119 about the precise obligations Plaintiff might accrue in the statutory language, in that it only requires unspecified "measures" or "actions" that presumably vary from site to site. The statute describes no specific order or request that issues from the agency, in contrast to the other provisions I have considered. Thus, it appears to be enforced through the general provision of M.C.L. § 324.20137(1)(k) that authorize the attorney general to bring suit to enforce the Act. There is no burden shifting or additional liability that accrues based on a particular agency action, merely the general liability for diso-

---

**6.** This reading of the statute is supported by M.C.L. § 324.20137(1)(g), (h), which notes that a court case may be brought for enforce-

ment of such an administrative order, not simply enforcement of the statute itself.

beying the statute. Because the agency has not given its final determination on the actions that Plaintiff must take, and because no legal obligation appears to be created by the issuance of the letters, Plaintiff offers little evidence that a challenge to M.C.L. § 324.20107(a) is fit for judicial determination at this time.

### 2. *Hardship to the parties of withholding court consideration.*

As discussed above, Plaintiff's exposure to liability is not increased by the issuance of the demand letters regarding M.C.L. § 324.20119, because liability does not begin to accrue until an administrative order is issued. Similarly, there does not appear to be much hardship in waiting for the challenge to M.C.L. § 324.20117(a), because liability will not increase during the time period that Plaintiff will have to wait for the agency to finally and specifically articulate those activities that it believes Plaintiff is required to take under M.C.L. § 324.20107(a).

The situation is altogether different regarding the challenges to M.C.L. §§ 324.20114(h) and 324.20137(1)(e). Plaintiff's exposure to liability for its failure to submit plans is currently increasing by $1,000 per day and will continue to do so until the government chooses to finally bring an enforcement action against it. In addition, the potential of increasing fines has been coupled with a shifting of the

burden regarding such liability when such an action is brought, such that it is Plaintiff's responsibility in the first instance to prove that it should not be fined (instead of the normal situation in which it would be the government's responsibility to show that such a fine is warranted).[7] Whether or not the daily growth in the potential liability is alone enough to find sufficient hardship, when it is coupled with the burden shifting, I find that Plaintiff has made a strong showing that it will suffer hardship from the delay.[8] Defendants' briefs make no allegation that the State will face hardship if the case goes forward now, absent its general opposition to judicial review.[9]

### 3. *Ripeness Determination*

As the above discussion makes clear, regarding M.C.L. §§ 324.20114(h) and 324.20137(1)(e), all prongs in the ripeness test have been satisfied, and overall, I find the challenges to these provisions to be ripe. Conversely, there is little in favor of finding the challenges to M.C.L. §§ 324.20119 and 324.20117(a) ripe, and I find that Plaintiff does not meet its burden of showing such ripeness regarding those statutes.

### JURISDICTION OVER STATE LAW CLAIMS

■■■ Plaintiff brings a count alleging that Defendants have violated its due pro-

---

7. Both parties identified the "good cause" provision of the statute as a defense in oral argument.

8. Defendants cite *Texas Energy Reserve Corp. v. Dept. of Energy* for the proposition that potential liability alone is not sufficient hardship to find ripeness. 710 F.2d 814 (Temp.App.1985). This situation differs in two important ways from that of *Texas Energy*: first, the potential liability in this case is growing daily instead of remaining stagnant, and second, the burden of refuting such liability once an action is brought is shifted to

Plaintiff instead of remaining with the government.

9. In oral argument, the government urged this Court to base its ripeness determination on a letter it did not provide to this Court. The evidence already before this Court is sufficient to find ripeness, given the statute at issue here, and the description of the contents offered by the government does not lead me to think this alleged letter would change my decision.

cess rights under the Michigan Constitution. (First Am. Compl. 18.) This count appears to raise an issue of first impression regarding whether NREPA conforms to these requirements of the Michigan Constitution. Michigan courts have sometimes interpreted the Michigan Constitution to provide different levels of protection than the U.S. Constitution provides in areas regarding personal rights that touch on due process. *People v. Alfafara,* 140 Mich.App. 551, 560–61, 364 N.W.2d 743 (1985). I exercise my discretion to decline to exercise pendant jurisdiction and DISMISS the state law claim without prejudice.

## CONCLUSION

For the reasons stated above, I GRANT Defendants' motion as to all claims regarding M.C.L. §§ 324.20119 and 324.20117(a), and dismiss those claims without prejudice, due to a lack of justiciability at this time. I decline to exercise jurisdiction over the state law claim and therefore DISMISS it without prejudice. I HOLD IN ABEYANCE all claims regarding M.C.L. §§ 324.20114(h) and 324.20137(1), pending a ruling on the merits on the remainder of the motion with regard to those two claims. In addition, I invite the parties to submit one final brief each, of no more than 20 pages, discussing more specifically only those arguments which (1) have already been raised in previous briefs, and (2) pertain to the merits of the remaining claims. Such briefs shall be filed no later than February 13, 2005.

**IT IS SO ORDERED.**